[Civ. No. 19509. Second Dist., Div. Two. June 12, 1953.]

H. J. RICHARDSON, Respondent, v. THE WALTER LAND COMPANY (a Corporation), Appellant.

Murchison & Cumming for Appellant.

Louis S. Edelberg for Respondent.

FOX, J.—Plaintiff brought this action to recover a 5 per cent commission for procuring a $65,000 loan for defendant The Walter Land Company. Judgment was rendered in plaintiff's favor for $3,250. Defendant appeals.

The Walter Land Company is a corporation and the owner of approximately 19 acres of land in Orange County. Bruce Murchison is president of the corporation but all of its stock is owned by Mrs. Grace Atherton. Early in 1951 it became necessary to pay off an existing trust deed of approximately $50,000. Murchison authorized Jacques LaSatier, a licensed real estate broker, to procure a loan of $65,000 secured by a trust deed on the property. LaSatier contacted plaintiff, who was also in the real estate business, relative to procuring such a loan. After inspecting the property plaintiff advised LaSatier of his inability to secure a loan of the amount desired solely on the security of the property. Subsequent conversations were had relative to additional security, resulting in LaSatier's supplying plaintiff with the name of a trust officer of a bank in Boston which held certain securities that belonged to Mrs. Atherton and suggesting that plaintiff telephone the bank official and determine the character of her securities. Plaintiff did this and was furnished a partial list of her stock holdings having a market value of some $220,000. Plaintiff then informed LaSatier that he could arrange the loan if these stocks were pledged as additional security. LaSatier advised plaintiff that the securities would be so pledged. On that basis plaintiff secured a lender ready, able and willing to make the loan. On April 2, 1951, plaintiff, LaSatier, Murchison and Ralph Weiler, representing the lender, met at the title insurance and trust company in Los Angeles for the purpose of completing the agreement and arranging an escrow to carry it out. On that occasion the terms of the loan were agreed upon. This included an agreement on the part of defendant, through Murchison, to pledge as additional security the stocks, a list of which had been furnished plaintiff by the Boston banker, and that the title insurance and trust company, rather than the lender, would be the pledge holder. Escrow instructions for the purpose of carrying out the transaction were then prepared and signed by Weiler for the lender and by Murchison for the borrower. The lender's portion of the instructions contained this language: ''Said note to be additionally secured by certain stocks, a list of which is to be approved by me.'' The borrower approved the lender's instructions but added ''Subject to approval of pledge agreement for additional security by stock.'' The borrower did not provide a pledge agreement, nor did it approve or suggest any revision of a form of such an agreement which was sent to it by plaintiff. Defendant

refused to pledge the stock and abandoned the transaction. It procured the loan through another broker on more favorable terms.

The court found that plaintiff produced a lender "ready, willing and able" to make the loan "on terms acceptable to the defendant corporation as borrower" and an escrow was opened, "duly signed and executed by borrower and lender to consummate the transaction."

Defendant contends that the parties had not agreed on all the terms of the loan hence there was no binding agreement and plaintiff was therefore not entitled to a commission. Proceeding upon the theory that the contract between the parties was embodied in the escrow instructions, it contends that the inclusion in the lender's escrow instructions of the sentence "Said note to be additionally secured by said stock, a list of which is to be approved by me" and the hand-written insertion in its own escrow instructions of the words "subject to approval of pledge agreement for additional security by stock," establishes the need of further negotiation between the parties before it may be said that a binding contract had been formed. In support of this assertion, it is argued that the lender is not obligated to make the loan until, by future agreement, the parties reach an accord as to how many shares of which particular stock, and the valuation thereof, is to be given as additional security, and as to who will serve as pledgeholder. This contention is untenable.

 As is proper where the language used in the escrow instructions creates an uncertainty and ambiguity as to what the agreement was, and particularly so where the action, as here, is between a party to the agreement and a third party, the trial court resorted to oral evidence to ascertain the exact nature of the agreement between defendant and the lender. (*Kern* v. *Henry*, 138 Cal.App. 46, 51-52 [31 P.2d 454] ; *Bonner* v. *Finney*, 110 Cal.App. 518, 522 [294 P. 466] ; *Broder* v. *Epstein*, 101 Cal.App.2d 197, 199 [225 P.2d 10] ; *C. L. Glover Co.* v. *Farinacci*, 113 Cal.App. 183, 187 [298 P. 133].) Under the axiomatic proposition that the evidence must be viewed in the light most favorable to the prevailing party (*Van Amersfoort* v. *Young*, 105 Cal.App.2d 22, 25 [232 P.2d 569] ; *Wilbur* v. *Wilbur*, 197 Cal. 1, 7 [239 P. 332]), there is substantial evidence to support, the trial court's finding that plaintiff had provided a lender on terms which defendant had agreed upon. There was testimony, obviously credited by the court, that the parties had entered into a

binding agreement whereby Weiler would supply a loan of $65,000 to defendant for one year at an interest rate of 10 per cent, secured by a note and trust deed upon property owned by defendant and additionally secured by the pledge of the stock previously referred to, a list of which Weiler had with him while negotiating the loan and which he had approved as collateral security. The evidence was that defendant would prepare the pledge agreement. Thereupon, escrow instructions were signed to effectuate this agreement, with reference made in both the lender's and borrower's instructions to the fact that the stocks were to be pledged as additional security upon the approval of a pledge agreement. The record shows that defendant refused to pledge the securities, as agreed, and did not take any steps to prepare a pledge agreement as contemplated. Instead, it gave written notice 10 days later of its rejection of the entire transaction.

It is clear that under the evidence adduced plaintiff had earned his right to a commission. The right to a commission in a loan transaction, such as here involved, is governed by the same principles as those relating to the sale of real or personal property. ▆ That rule, in the absence of a special agreement to the contrary, is ". . . that a broker employed to sell real or personal property has earned his commission when, within the life of his contract, or any extension thereof, he has produced a person who is ready, willing, and able to purchase the property on terms satisfactory to the seller, and has obtained a binding and valid contract for a sale on the terms proposed by the seller, or has brought the seller and buyer together and thus enabled them to enter into a contract of sale, or has produced such a purchaser who has verbally accepted the seller's terms and offered to enter into a written contract embodying the said terms and binding upon both parties. In such case the broker's right to commission accrues when the contract of sale is executed or when opportunity to make such contract is given the seller, and the broker becomes entitled to his commission even though the seller is unable or unwilling to complete the sale." (*Twogood* v. *Monnette,* 191 Cal. 103, 107 [215 P. 542].) ▆ The evidence recited above demonstrates that plaintiff brought to defendant a party who was ready, willing, and able to furnish the money required on mutually acceptable terms and who had entered into a valid and complete agreement to do so. He had thus earned his commission, regardless of the fact that the transaction was not consummated by defendant's failure to proceed

with its obligations under the contract. (*Smith* v. *Schiele,* 93 Cal. 144, 149 [28 P. 857]; *Carlin* v. *Lifur,* 2 Cal.App. 590, 592 [84 P. 292]; *Barnes* v. *Osgood,* 103 Cal.App. 730, 734 [284 P. 975]; *Pellaton* v. *Brunski,* 69 Cal.App. 301, 307 [231 P. 583].) The provision in the escrow that the list of stocks to be provided by the borrower as additional security was to be approved by Weiler does not necessarily mean that the kind, amount, and value of the stocks to be thus hypothecated were yet to be agreed upon. In fact, the evidence supports the inference that this provision was not inserted for that purpose since there is substantial evidence that the parties had already agreed on the stocks to be pledged. This provision could well have been inserted as a means of identifying the stocks for the escrow holder which the parties had agreed to pledge. ■ Defendant having precluded by its own remissness the materialization of the contractual objectives, it cannot take advantage of such act to defeat its liability to plaintiff. (*Bewick* v. *Mecham,* 26 Cal.2d 92, 99 [156 P.2d 757, 157 A.L.R. 1277]; *Overton* v. *Vita-Food Corp.,* 94 Cal.App.2d 367, 371 [210 P.2d 757]; *Showers* v. *Rober,* 92 Cal.App. 171, 175-176 [267 P. 884].) We must hold, therefore, that the trial court was warranted in finding upon conflicting evidence that a complete agreement had already been reached on all the essential terms of the transaction. ■ An appellate court will adhere to the interpretation of a contract which is reasonable and supported by the evidence. (*Estate of Rule,* 25 Cal.2d 1, 11 [152 P.2d 1003, 155 A.L.R. 1319]; *Palmtag* v. *Danielson,* 30 Cal.2d 517, 522 [183 P.2d 265].)

Defendant makes the further contention that in any event plaintiff's recovery should be reduced $1,250. This argument is based upon plaintiff's testimony that he had agreed to pay LaSatier that amount; that the latter is a defendant in this action and did not seek by cross-complaint or counterclaim to recover his share of the commission; and that he has thereby waived it and is now barred from making any claim therefor. ■ It may well be that the failure of LaSatier to set up any claim for a portion of the commission would bar any later action therefor in view of the provisions of section 439, Code of Civil Procedure.* But the purpose of that section is to prevent piecemeal litigation. It is procedural in char-

---

*Section 439 reads: "If the defendant omits to set up a counterclaim upon a cause arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, neither he nor his assignee can afterwards maintain an action against the plaintiff therefor."

acter and simply denies a defendant relief in the designated circumstances. It does not wipe out or invalidate the obligation. Plaintiff testified he had agreed to give LaSatier $1,250 as his part of the commission. Plaintiff has thus acknowledged under oath his agreement to pay LaSatier that amount in the event he collects this commission. We may not assume plaintiff will now deny this obligation and refuse to discharge it even though LaSatier might not be able, under the circumstances, to enforce payment. Thus plaintiff is only getting what he would have been entitled to if the performance of the agreement had not been prevented by defendant's conduct.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.