[No. A036381. First Dist., Div. Four. Feb. 29, 1988.]

WILLIAM S. KAHN et al., Plaintiffs and Appellants, v.
WILLIAM BERMAN et al., Defendants and Appellants.

1500

---

COUNSEL

Edwin B. Medlin and Ropers, Majeski, Kohn, Bentley, Wagner & Kane for Plaintiffs and Appellants.

Clark A. Barrett for Defendants and Appellants.

## OPINION

**SABRAW, J.**—William and Nana Berman appeal from an order permitting the sale of their personal residence pursuant to Code of Civil Procedure section 704.780.[1] Plaintiffs William, Christine, John and Elva Kahn cross-appeal from the same order. We reverse.

### I.  THE FACTUAL AND PROCEDURAL HISTORY

William and John Kahn contracted with William Berman, Carl Pecson and Ace Truck & Equipment Rental, Inc., for the purchase of the Ace rental business in Las Vegas, Nevada. After disputes arose between the parties, litigation ensued in the Nevada state courts. In 1981, following a court trial of equitable issues, William, Christine, John and Elva Kahn were awarded a judgment declaring and enforcing certain rights in their favor.

When a trial on the breach of contract, fraud and damages issues was held in 1984, a jury returned a verdict in favor of the Kahns on their cross-complaint. A money judgment was entered on July 19, 1984, against William and Nana Berman in an amount greater than $1.2 million and against Carl and Shirley Pecson in an amount greater than $900,000. The judgment included significant punitive damages based on the jury's verdict that fraud had been committed. It was appealed on December 17, 1984.

The Kahns recorded the entire Nevada money judgment in the San Mateo County Recorder's office on July 20, 1984. Five days later, on July 25, 1984, a purported $500,000 first deed of trust was recorded against the Bermans' Hillsborough, California, residence by an entity named "The Berman Corporation." The deed of trust bore a date of December 15, 1983, but the notary's acknowledgement of William and Nana Berman's signatures was dated July 20, 1984, just one day after the Nevada judgment was entered. The address listed for the Berman Corporation on the deed of trust was 585 Remillard Drive, Hillsborough, California, the same property purportedly being encumbered.

On March 6, 1985, the Kahns filed an application in the San Mateo County Superior Court requesting entry of a judgment based on the Nevada judgment. A new California judgment was entered on the sister-state judgment by the clerk of the court on March 13, 1985. Notice of entry of the judgment was served on the Bermans on March 14, 1985. However, the notice contained a typographical error—rather than correctly reflecting that judgment had been entered in the amount of $1,237,433.38, it stated

---

[1] Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

that the judgment was for $123,744.38. On September 5, 1985, the Bermans' counsel accepted service of a corrected notice of entry of judgment on the sister-state judgment.

The Kahns had a writ of execution against a dwelling house (the Bermans' Hillsborough residence) issued by the San Mateo County Superior Court on February 27, 1986. The writ of execution was levied by the sheriff and recorded on March 7, 1986. Notice of the levy was mailed the same day.

On March 31, 1986, the Kahns applied for an order authorizing the sale of the Berman residence. William Berman recorded a declaration of homestead on his Hillsborough residence on April 18, 1986. (§§ 704.920, 704.930.) An abstract of judgment reflecting the Kahns' new California judgment was recorded in the San Mateo County Recorder's Office on May 1, 1986.

The Bermans opposed the Kahns' application for an order of sale on several grounds. Among other things, they argued that they were entitled to a $55,000 homestead exemption based on the April 18, 1986, declaration of homestead. (§§ 704.720, 704.730.) They took the position that the declaration of homestead was senior to any judgment lien based on the Nevada judgment because no *abstract* of the Nevada judgment had been filed in San Mateo by April 18, 1986. In the event the court rejected their declared homestead argument, the Bermans alternatively asserted that they were entitled to claim the statutory homestead exemption authorized by section 704.720. Finally, they argued that, if an order of sale was granted, the minimum bid was required to be at least $555,644.23 (homestead exemption of $55,000, property taxes of $644.23, and the $500,000 Berman Corporation deed of trust). (§ 704.800, subd. (a).)

On July 24, 1986, following a contested hearing, the Kahns obtained an order for the sale of the Bermans' Hillsborough residence pursuant to Code of Civil Procedure section 704.780. Among other things, the order stated that: (1) the sheriff had completed levy on the Bermans' residence in the form and manner required by law; (2) although the property was a valid homestead, the Kahns' judgment lien had priority because the declaration of homestead was not recorded until April 19, 1986 [*sic*: April 18, 1986]; (3) the fair market value of the dwelling was $450,000; and (4) the Bermans were not entitled to claim the statutory homestead exemption.

The court's order for the sale of the Berman residence is an appealable order. (§§ 704.830, 703.600.) The Bermans filed a timely notice of appeal from that order. The Kahns then filed a timely notice of cross-appeal.

## II. Analysis

### A. *Recordation in California of a Sister-state Judgment Does Not Create a Judgment Lien on Real Property in California.*

This case involves the interplay of two statutory schemes: (1) the 1974 Enforcement of Sister State Money Judgments Act (§§ 1710.10-1710.65); and (2) the 1982 Enforcement of Judgments Law (§§ 680.010-724.260).

In 1982, acting on the recommendation of the California Law Review Commission, the Legislature significantly revised the statutory provisions for enforcement of judgments, enacting a new title 9 in the Code of Civil Procedure (titled "Enforcement of Judgments"). (Stats. 1982, ch. 1364, § 2, p. 5070.) The new law became operative on July 1, 1983. (Stats. 1982, ch. 1364, § 3, p. 5236.)

There is presently no single statute which clearly and explicitly lists those money judgments (i.e., California, sister-state, federal or foreign) that may serve as the basis for creation of a judgment lien by recordation. Prior to its amendment in 1982, section 674 contained such a listing.[2] This circumstance was noted during the legislative process in 1982: "The portion of the first sentence of Section 674 which specified the courts that may issue judgments as the basis for a judgment lien is not continued as such, *but its substance is continued in Section 637.310* except for the misleading language pertaining to judgments of federal courts." (See legis. committee com., Deering's Ann. Code Civ. Proc. (1983 ed.) § 674, p. 100, 16 Cal. Law Revision Com. Rep. (1982) p. 1791, italics added.)[3]

Section 697.310 states, in relevant part: "(a) Except as otherwise provided by statute, a judgment lien on real property is created under this section by

---

[2]The pre-1983 version of section 674 provided, in relevant part: "(a) An abstract of the judgment or decree of any court of this state, including a judgment entered pursuant to Chapter 1 (commencing with Section 1710.10) of Title II of Part 3 [the Sister State Money Judgments Act], or a judgment of any court sitting as a small claims court, or any court of record of the United States, the enforcement of which has not been stayed on appeal or pursuant to Section 1710.50, certified by the clerk, judge or justice of the court where such judgment or decree was rendered, may be recorded with the recorder of any county and from such recording the judgment or decree becomes a lien upon all the real property of the judgment debtor, not exempt from execution, in such county, owned by him at the time, or which he may afterward and before the lien expires, acquire." (Stats. 1980, ch. 1281, § 2, p. 4326.)

[3]As explained by the Law Revision Commission, "Existing law [section 674] specifically refers to judgments and decrees of courts of this state, judgments entered in this state on the basis of sister state judgments, judgments of small claims courts, judgments of 'any court of record of the United States,' and orders for the reimbursement to a county for legal services . . . provided to wards and dependent children. The proposed law continues the substance of existing law except that the misleading language pertaining to judgments of federal courts is eliminated." (16 Cal. Law Revision Com. Rep., *op. cit, supra*, pp. 1041-1042, fns. omitted.)

recording an abstract of a money judgment with the county recorder." However, section 697.310 does not explicitly identify the courts which may issue judgments that can form the basis for a judgment lien. To determine those courts, it is necessary to refer to two other related statutes. The new title 9 commences with a number of statutory definitions. Among them is section 680.230 which states: " 'Judgment' means a judgment, order, or decree *entered in a court of this state*." (Italics added.) Next, section 680.270 defines "money judgment" as "that part of a judgment that requires the payment of money." Reading all of these statutes together with the statutory history, it is apparent that recordation of a sister-state judgment cannot directly give rise to a judgment lien on real property located in California— a sister-state money judgment must first be reduced to a California judgment. (See also Ogden's Revised Cal. Real Property Law (1987 supp.) § 19.10, p. 37.)[4]

■ In the present case, rather than immediately filing an application for entry of a new California judgment based on the Nevada judgment entered on July 19, 1984, plaintiffs recorded a certified copy of the entire Nevada judgment in San Mateo County. Because plaintiffs did not initially comply with the Sister State Money Judgments Act by obtaining a California judgment, the recordation had no effect.

B. *The Full Faith and Credit Clause of the United States Constitution Does Not Require California to Follow Nevada Procedures for Creation of a Judgment Lien.*

■ Anticipating the difficulty presented by their initial failure to have a California judgment entered on the Nevada judgment and to then record an abstract of such a California judgment, the Kahns argue in their cross-appeal that requiring them to follow California rather than Nevada procedures for enforcement of the Nevada judgment violates the full faith and credit clause of the United States Constitution. (U.S. Const., art. IV, § 1.)[5] They further assert that recording of a certified copy of the Nevada judgment was sufficient under the law of Nevada to create a judgment lien in California. (Citing Nev.Rev.Stats., § 17.150.)

---

[4] Ogden's states: "(4) Effective July 1, 1983, CCP § 697.060 replaced § 697 as authority for the proposition that a judgment of a United States court [i.e., a federal court] can serve as the basis of a judgment lien. It is established as a lien on real property by recording an abstract or certified copy. Both sister-state money judgments and foreign money judgments have been enforceable in the same manner as California judgments since January 1, 1975 [the effective date of the Sister State Money Judgments Act]. CCP §§ 1710.35, 1713.3. Therefore, they may serve as the basis for judgment liens. *Sister-state judgments must first be established as California judgments.* CCP § 1710.25." (Italics added.)

[5] Article IV, section 1 provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."

Although the Kahns correctly recite Nevada law regarding creation of a judgment lien on real property located in Nevada, we disagree with their constitutional assertion that Nevada procedural law must be followed when enforcing a Nevada judgment in California. The Kahns cite only the bare language of article IV of the Constitution for the proposition that California is required to follow Nevada procedures for creation of a judgment lien in such a case. They fail to provide any other authority on this point. However, our own research reveals that a contrary interpretation was rendered by the United States Supreme Court in the early days of the Constitution.

In *M'Elmoyle* v. *Cohen* (1839) 38 U.S. (13 Pet.) 312 [10 L.Ed. 177], the Supreme Court held that a South Carolina judgment could not be directly enforced by execution in Georgia. ■ The court explained that "To give it the force of a judgment in another State, it must be made a judgment there, and can only be executed in the latter as its laws may permit. It must be conceded that the judgment of a State court cannot be enforced out of the State by an execution issued within it." (*Id.* at p. 325 [10 L.Ed. at p. 183]; see also *Sistare* v. *Sistare* (1910) 218 U.S. 1, 26 [54 L.Ed. 905, 914, 30 S.Ct. 682] [" . . . although mere modes of execution provided by the laws of a State in which a judgment is rendered are not, by operation of the full faith and credit clause, obligatory upon the courts of another State in which the judgment is sought to be enforced, nevertheless if the judgment be an enforceable judgment in the State where rendered the duty to give effect to it in another State clearly results from the full faith and credit clause, although the modes of procedure to enforce the collection may not be the same in both States"]; *Huntington* v. *Attrill* (1892) 146 U.S. 657, 685 [36 L.Ed. 1123, 1134, 13 S.Ct. 224] [art. IV, § 1, of the Constitution does not "put the judgments of other States upon the footing of domestic judgments, to be enforced by execution; but [it leaves] the manner in which they may be enforced to the law of the State in which they are sued on, pleaded, or offered in evidence"], citing *M'Elmoyle* v. *Cohen, supra,* 38 U.S. (13 Pet.) 312, 325 [10 L.Ed.177, 183]; cf. *Weir* v. *Corbett* (1964) 229 Cal.App.2d 290 [40 Cal.Rptr. 161].)[6]

---

[6] In *Weir* v. *Corbett,* plaintiff Weir obtained a judgment in the state of Washington against the Corbett defendants. At the time (1956), Washington law provided that a judgment could be enforced for a period of six years. (*Id.* at pp. 291-292.) Weir commenced an action in California in October 1962 seeking to have a California judgment entered on the basis of the Washington judgment. Judgment in California was entered three days before the Washington judgment was to expire. The Corbett defendants appealed, asserting that the Washington rule of limitation acted to extinguish the California judgment when six years had elapsed from the date the Washington judgment was entered (*id.* at p. 291) and, therefore, the longer period of time allowed for enforcement of a judgment in California was of no effect. The Court of Appeal disagreed and affirmed. It held that, under the full faith and credit clause of the United States Constitution, the means of enforcing the Washington judgment was a matter governed

■ It follows from these authorities that the Kahns' argument must be rejected. The full faith and credit clause is not violated by requiring that a sister-state judgment first be reduced to a California judgment before it may serve as the basis for a judgment lien on real property located in California.

C. *The Order Authorizing the Sale of the Bermans' Residence Was Erroneous.*

The traditional method for enforcing a money judgment obtained in a sister state was to institute an independent action on the sister-state judgment in a California court. (8 Witkin, Cal. Procedure (3d ed. 1985) Enforcement of Judgment, § 406, p. 346.) In 1974 the Sister State Money Judgments Act created a simpler alternative method for registration of such judgments. (§ 1710.10 et seq.)

Section 1710.15, subdivision (a), provides "A judgment creditor may apply for the entry of a judgment based on a sister state judgment by filing an application pursuant to Section 1710.20." Once an application is properly filed in an appropriate venue, the clerk of the court is required to enter California judgment. (§ 1710.25.) With certain statutory exceptions, the new judgment has the same effect as an original California money judgment and "may be enforced or satisfied in like manner." (§ 1710.35.)

The next step in the process is for notice of entry of the California judgment to be served "promptly" by the judgment creditor upon the judgment debtor in the same manner as provided for service of summons. (§ 1710.30, subd. (a).) Within 30 days after service of the notice of entry, the judgment debtor is entitled to make a motion to have the new judgment vacated. (§ 1710.40.) The judgment can be vacated "on any ground which would be a defense to an action in this state on the sister state judgment . . . ." (§ 1710.40, subd. (a).) In most cases, a judgment creditor cannot have a writ of execution issued until at least 30 days after the judgment creditor has been served with notice of entry of the new judgment. (§ 1710.45, subd. (a).)

■ The Kahns completed the statutory prerequisites for enforcement of the Nevada judgment on September 5, 1985, when notice of entry of their new California judgment was accepted by the Bermans' counsel. ■ ■ ■ Rather than creating a judgment lien by recording an abstract of the new judgment, the Kahns next proceeded with execution against the Bermans' residence.[7] (§ 704.750 et seq.; cf. *Ingebretsen* v. *McNamer* (1982)

---

by the law of the forum (California). (*Id.* at p. 293, citing *M'Elmoyle* v. *Cohen, supra,* 38 U.S. (13 Pet.) 312, 325 [10 L.Ed. 177, 183-184].)

[7] Nothing in the statutory scheme requires a judgment creditor to create a judgment lien. The creditor can simply choose to levy execution, thereby creating an execution lien. (§ 697.710.)

137 Cal.App.3d 957, 960 [187 Cal.Rptr. 529] [construing execution under former statutory scheme for homestead exemptions].)

The first step for execution on a dwelling house is for the judgment creditor to have the superior court issue a writ of execution. (§§ 699.510, 699.520.) The judgment creditor then delivers the writ to the levying officer with instructions for service. (§ 699.530.) Next, the officer levies on the real property. After the levy, the officer is required to promptly serve notice on the judgment creditor that the levy has been made. (§ 704.750, subd. (a).) Within 20 days after the notice is served, the judgment creditor must apply for an order of sale or the property will be released. (*Ibid.*) The application must state whether the dwelling is a homestead and must also state the amount of any liens or encumbrances on the dwelling. (§ 704.760.) If the court thereafter determines that the dwelling is exempt, it must also determine the fair market value and make an order for its sale subject to the homestead exemption. (§ 704.780, subd. (b).)[8] If no bid is received at the sale which exceeds the amount of the homestead exemption plus the amount needed to satisfy all liens and encumbrances, the homestead cannot be sold. (§ 704.800, subd. (a).)[9] Finally if no bid in excess of 90 percent of the fair market value of the dwelling (as determined pursuant to § 704.780) is received, the creditor must return to court and seek an order permitting the sale for the highest bid that exceeds the total amount of the homestead exemption and all liens and encumbrances. (§ 704.800, subd. (b).)

■■■ Although portions of the foregoing statutory scheme were followed in this case, the correct result was not reached. The March 7, 1986, levy on the Bermans' residence gave rise to an execution lien (even though no judgment lien had previously been created). (§ 697.710.) The Kahns thereafter applied for an order of sale pursuant to sections 704.750, 704.760, and

---

[8]Section 704.780, subdivision (b) provides: "The court shall determine whether the dwelling is exempt. If the court determines that the dwelling is exempt, the court shall determine the amount of the homestead exemption and the fair market value of the dwelling and shall make an order for sale of the dwelling subject to the homestead exemption. The order for sale of the dwelling subject to the homestead exemption shall specify the amount of the proceeds of the sale that is to be distributed to each person having a lien or encumbrance on the dwelling and shall include the name and address of each such person. Subject to the provisions of this article, the sale is governed by Article 6 (commencing with Section 701.510) of Chapter 3. If the court determines that the dwelling is not exempt, the court shall make an order for sale of the property in the manner provided in Article 6 (commencing with Section 701.510) of Chapter 3."

[9]Section 704.800, subdivision (a) provides: "(a) If no bid is received at a sale of a homestead pursuant to a court order for sale that exceeds the amount of the homestead exemption plus any additional amount necessary to satisfy all liens and encumbrances on the property, including but not limited to any attachment or judgment lien, the homestead shall not be sold and shall be released and is not hereafter subject to a court order for sale upon subsequent application by the same judgment creditor for a period of one year."

704.780. The trial court correctly determined that the Kahns' March 7, 1986, execution lien had priority over the Bermans' April 18, 1986, declaration of homestead. However, in their response to the application for an order of sale, the Bermans had filed a declaration which established that the property in question was a homestead as defined in section 704.710, subdivision (c),[10] because: (1) it was the principal dwelling where they resided on March 7, 1986 (the date the Kahns' execution lien arose); and (2) they had continuously resided there since that time. The declaration also established that the Bermans were over the age of 65. As a result, the trial court erred when it concluded that the Bermans were not entitled to the $55,000 statutory exemption provided by sections 704.720 and 704.730, subdivision (a)(3).

When the court issued its order of sale pursuant to section 704.780, it should have first determined that the property was exempt (i.e., subject to a statutory homestead exemption), next determined the fair market value of the property (found to be $450,000) and the amount of the homestead exemption ($55,000), and finally specified the amounts of the proceeds of the sale to be distributed to the lien and encumbrance holders. (§ 704.780, subd. (b).) Thus, the order of sale should have properly listed, inter alia, the $55,000 homestead exemption, the property tax lien of $644.23, and the $500,000 Berman Corporation deed of trust.[11]

It follows that the order of sale must be and is reversed.

Anderson, P. J., and Poché, J., concurred.

---

[10] Section 704.710, subdivision (c) provides in relevant part: "(c) 'Homestead' means the principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court determination that the dwelling is a homestead."

[11] Needless to say, such an order might have prevented the sale of the property. As we have already noted, section 704.800, subdivision (a), prohibits the sale of a homestead unless a minimum bid sufficient to cover all of the liens and encumbrances is received. At the same time, however, we do not intend to pass on the validity or legitimacy of the $500,000 deed of trust recorded by the "Berman Corporation." It is sufficient to say that the circumstances of the recording were suspicious. Finally, the Kahns have access to other statutory remedies for challenging the deed of trust. (Civ. Code, § 3439 et seq. [the Uniform Fraudulent Transfer Act].)

PAGES 1352-1419:

*(People* v. *Yarborough*[1]; *People* v. *Hooker*[2]; *Alpha Beta, Inc.* v. *Superior Court*[3]; *Kappell* v. *Bartlett*[4])*

---

[1] Deleted on direction of Supreme Court by order dated June 2, 1988.
[2] Deleted on direction of Supreme Court by order dated June 9, 1988.
[3] Deleted on direction of Supreme Court by order dated June 23, 1988.
[4] Rehearing granted. See 200 Cal.App.3d 1457 for subsequent opinion.