[No. B223723. Second Dist., Div. Eight. Apr. 12, 2011.]

R.S. et al., Plaintiffs and Appellants, v.
PACIFICARE LIFE AND HEALTH INSURANCE COMPANY et al.,
Defendants and Respondents.

## COUNSEL

Kabateck Brown Kellner, Brian S. Kabateck, Richard L. Kellner and Joshua H. Haffner for Plaintiffs and Appellants.

Cooley, William E. Grauer, Mazda K. Antia and Bradley A. Lebow for Defendants and Respondents.

## OPINION

**RUBIN, Acting P. J.**—This appeal involves California's application of the full faith and credit clause of the United States Constitution (U.S. Const., art. IV, § 1) to a Missouri state court judgment. Bound by that clause, we affirm the superior court's judgment dismissing the complaint of appellants R.C. and R.S. because the Missouri judgment barred their complaint.

### FACTS AND PROCEEDINGS

Because this appeal is from a judgment sustaining a demurrer without leave to amend, we state the facts as alleged in appellants' complaint without passing on their veracity. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Registered domestic partners R.C. and R.S. maintained residences in California and Missouri. In 2004, they purchased health insurance policies issued by respondents PacifiCare Life and Health Insurance Company and Golden Rule Insurance Company (collectively Insurers). When applying for the policies, appellants disclosed that each of them was infected with HIV.[1] In September 2007, Insurers stopped paying benefits under appellants' policies. Because appellants no longer could afford to pay for their medical care, the termination of benefits damaged their

---

[1] R.C.'s infection later advanced to AIDS and in January 2011 he passed away. We have granted the motion of R.C.'s sister, Elizabeth W., to continue to prosecute the appeal as the personal representative of R.C.'s estate.

health. In June 2008, Insurers filed a declaratory relief action in Missouri state court seeking rescission of the insurance policies. The Missouri action alleged multiple grounds for rescission, including appellants' purported misrepresentation of their state residency, fraudulent submission of duplicate medical claims, and misrepresentation of existence of other insurance coverage. Five months later in November 2008, appellants filed in the Missouri action a counterclaim for breach of contract based on Insurers' termination of benefits. The following month, the Missouri state court issued a preliminary injunction ordering Insurers to resume paying for appellants' medical care retroactively to Insurers' termination of benefits in September 2007. Appellants allege that despite the preliminary injunction, Insurers refused to resume paying benefits.

In June 2009 while Insurers' rescission action was pending, appellants dismissed without prejudice their breach of contract counterclaim. The next day, appellants filed in California state court their complaint against Insurers at issue in this appeal. The gist of their complaint alleged Insurers' failure to pay benefits damaged appellants' health because appellants could not afford to pay for the medication and health care they needed. Their complaint alleged causes of action for breach of contract; breach of the implied covenant of good faith and fair dealing for Insurers' unreasonable claims investigations and withholding of benefits; and unfair business practices in violation of Business and Professions Code section 17200 and Insurance Code section 790.03, subdivision (h).

Insurers moved to stay the California proceeding. They asserted the California complaint raised issues identical to those pending in their declaratory relief action in Missouri. Accordingly, they asked the California court to await the Missouri court's entry of judgment before proceeding with the California matter. The California court agreed.

In February 2010, the Missouri court entered judgment for appellants. Rejecting every one of Insurers' grounds for rescinding the insurance policies, the Missouri court found appellants had not defrauded Insurers. The Missouri court therefore ordered Insurers to pay appellants their full benefits under the policies, including benefits withheld in the past. Insurers accepted the Missouri judgment, and nothing in the record suggests they have violated the Missouri court's order.

Following entry of the Missouri judgment, the California court lifted its stay. Insurers thereafter demurred to appellants' California complaint. Insurers' demurrer argued that Missouri's compulsory counterclaim rule, which Insurers asserted California was obligated to apply under full faith and credit principles, barred appellants' lawsuit. Opposing the demurrer, appellants

asserted Missouri's compulsory counterclaim rule did not apply to their California claims, and thus their withdrawal of those claims from the Missouri action did not prohibit them from pursuing the claims in California.

The trial court sustained Insurers' demurrer without leave to amend. The court concluded constitutional mandates and California law directed the court to look to Missouri law to determine the consequences under Missouri's compulsory counterclaim rule of appellants not pursuing their counterclaims in the Missouri proceeding. The court stated: "Under both California Code of Civil Procedure § 1913 [(effect of sister state judgment)] and the Full Faith and Credit Clause of the United States Constitution, when determining the preclusive effect of a sister-state judgment, California courts measure that effect under the law of the state whose court rendered the judgment. Under the law of Missouri, the Missouri Judgment bars the claims advanced by [appellants] in the present action because they could have, and procedurally should have, been brought as counterclaims in the Missouri Action."[2] Holding that the Missouri judgment prohibited appellants from pursuing their California claims, the trial court dismissed appellants' complaint and entered judgment for Insurers. This appeal followed.

## STANDARD OF REVIEW

" 'We treat [a] demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the [appellant]." (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.)[3]

---

[2] Elsewhere in its ruling, the court reiterated: "[U]nder both the United States Constitution and controlling California precedent, California courts are required by [the full faith and credit] doctrine to enforce sister-state judgments as those judgments would be enforced in the state in which they were issued. Because [appellants'] present claims should have been brought as compulsory counterclaims in the Missouri Action, those claims are barred by Missouri's compulsory counterclaim rule and must be dismissed in this action."

[3] Appellants ask for reversal of the order sustaining the demurrer and do not ask for leave to amend.

## DISCUSSION

1. *Full Faith and Credit Principles Apply to the Missouri Judgment, Including the Effect on Unpled Counterclaims*

■ Generally speaking, the full faith and credit clause of the federal Constitution obligates a state to honor judgments from the courts of sister states. (U.S. Const., art. IV, § 1; see also 28 U.S.C. § 1738 [federal statute codifying full faith and credit clause].) This appeal involves California's application of full faith and credit principles to Missouri's compulsory counterclaim rule. Missouri Supreme Court Rules, rule 55.32(a) (hereafter rule 55.32(a)) states: "**Compulsory Counterclaims.** A pleading shall state as a counterclaim any claim that at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."

### A. *Appellants' Contentions*

Appellants assert that a sister state's designation of a cause of action as a "compulsory counterclaim" is a procedural matter not part of a court's judgment. (Cf. *Shisler v. Sanfer Sports Cars, Inc.* (2008) 167 Cal.App.4th 1, 10 [83 Cal.Rptr.3d 771] [acknowledging difference between " 'substantive law which gives or declares the right' " and "procedural" law which governs how the right is enforced]; *Richardson v. Walter Land Co.* (1953) 118 Cal.App.2d 459, 464–465 [258 P.2d 42] [counterclaim statute is "procedural in character and simply denies a defendant relief in the designated circum-stances. It does not wipe out or invalidate the obligation."].) Unembraced by the judgment, procedural matters, in appellants' estimation, lie beyond the reach of the full faith and credit clause. Instead, appellants conclude, the forum state—here, California—applies its own procedural law when enforc-ing a sister state judgment. Appellants cite case authority that "[i]t is well established that while the courts generally enforce the substantive rights created by the laws of other jurisdictions, the procedural matters are governed by the law of the forum [citations]. As defined in the case law, the terms 'practice' and 'procedure' include the mode of procedure by which a legal right is enforced as distinguished from" the substantive law which gives or declares the right. (*World Wide Imports, Inc. v. Bartel* (1983) 145 Cal.App.3d 1006, 1012 [193 Cal.Rptr. 830], fn. omitted (*World Wide Imports*).) Thus, the Missouri court's declaration of appellants' and Insurers' rights and obliga-tions under the insurance policies is, according to appellants, a judgment entitled to full faith and credit, but Missouri's procedural rule governing when counterclaims must be asserted is not part of the judgment to which full

faith and credit applies. Consequently, the law of California, as the forum state, governs the procedural disposition of appellants' counterclaims and in California no counterclaim is compulsory in a declaratory relief action because the counterclaim statute—Code of Civil Procedure section 426.60—states: "This article [on compulsory cross-complaints] does not apply where the only relief sought is a declaration of the rights and duties of the respective parties in an action for declaratory relief . . . ."[4] Thus, appellants contend, the trial court erred in ruling the Missouri judgment barred their California complaint.

In support, appellants cite *Van Pembrook v. Zero Manufacturing Co.* (1985) 146 Mich.App. 87 [380 N.W.2d 60] (*Van Pembrook*), a decision in which the forum state—Michigan—considered application of Missouri's compulsory counterclaim rule to Michigan's enforcement of a Missouri judgment. *Van Pembrook* noted that the full faith and credit clause aims to stop a state from relitigating a matter already decided by a sister state. *Van Pembrook* further noted that Missouri's compulsory counterclaim rule seeks to avoid judicially inefficient piecemeal litigation of related claims. (See also *Richardson v. Walter Land Co., supra*, 118 Cal.App.2d at p. 464 [purpose of Cal.'s compulsory counterclaim rule "is to prevent piecemeal litigation"].) *Van Pembrook* explained: "The purpose behind the full faith and credit clause as applied to judicial proceedings is to avoid 'relitigation in other states of adjudicated issues'. [Citation.] . . . [Citation.] The rationale behind the Missouri compulsory counterclaim rule is to avoid multiplicity of suits and to facilitate the proper and expeditious disposal of litigation. [Citation.] [Missouri's] local interest in judicial economy is separate and distinct from the national interest in avoiding the relitigation of adjudicated claims." (*Van Pembrook, supra*, 380 N.W.2d at p. 68.)

*Van Pembrook*'s analysis of the different purposes of the full faith and credit clause and Missouri's compulsory counterclaim rule supports appellants here. First, a California trial of appellants' complaint alleging breach of contract, bad faith, and unfair business practices does not involve relitigating matters already heard by the Missouri court because the Missouri declaratory relief action tried only Insurers' entitlement to rescission based upon appellants' purported fraud and misrepresentation. Second, a California trial of appellants' complaint does not consume Missouri's judicial resources. If one's analysis went no further than *Van Pembrook*'s policy insights, one

---

[4] We accept for the sake of argument that California deems an action to rescind an insurance policy to be an action for declaratory relief. (*United Fidelity Life Ins. Co. v. Emert* (1996) 49 Cal.App.4th 941, 944 [57 Cal.Rptr.2d 14].)

might reasonably conclude that Missouri's compulsory counterclaim rule does not bar appellants' California complaint against Insurers.[5]

Pressing on, appellants additionally contend Missouri's counterclaim rule is akin to a statute of limitations, and it is well established that full faith and credit principles do not govern statutes of limitations. (*Sun Oil Co. v. Wortman* (1988) 486 U.S. 717, 721, 729, fn. 3 [100 L.Ed.2d 743, 108 S.Ct. 2117] [Kan. state court did not violate full faith and credit clause by applying Kan. statute of limitations to claims arising from, and substantively governed by, the laws of, Tex., Okla., and La.]; *Matanuska Valley Lines, Inc. v. Molitor* (9th Cir. 1966) 365 F.2d 358, 360 ["Application of the forum's statute of limitations entails no violation of the full faith and credit clause of the Constitution since such statutes are deemed to affect procedure only and not the substance of the action."]; *Wells v. Simonds Abrasive Co.* (1953) 345 U.S. 514, 516 [97 L.Ed. 1211, 73 S.Ct. 856].) *Van Pembrook* stamped a compulsory counterclaim rule as equivalent to a statute of limitations because both may dispose of a claim without litigating its merits. *Van Pembrook* explained: "Because it forfeits an unlitigated claim, Missouri's compulsory counterclaim rule is analogous to statutes of limitations, which are not ordinarily entitled to full faith and credit in foreign jurisdictions. [Citations.] For full faith and credit purposes, therefore, we find that Missouri's compulsory counterclaim rule is [not] an inherent part of the judgment. Therefore, full faith and credit does not compel the dismissal of the present claim." (*Van Pembrook, supra,* 380 N.W.2d at p. 68.)

### B. *Analysis*

We find appellants' contention that the full faith and credit clause does not apply to Missouri's compulsory counterclaim rule plausible, but ultimately not persuasive, for several reasons. First, the law favors expansive application of the full faith and credit clause in order to fulfill the clause's purpose of ensuring that all states within our federal system recognize each other's official acts, judicial actions, and judgments. The authorities supporting a broad reading are long-standing and numerous:

—*Baker v. General Motors Corp.* (1998) 522 U.S. 222, 232–233 [139 L.Ed.2d 580, 118 S.Ct. 657]: "Our precedent differentiates the credit owed to laws . . . and to judgments. 'In numerous cases this Court has held that credit must be given to the judgment of another state although the forum would not be required to entertain the suit on which the judgment was

---

[5] Insurers assert *Van Pembrook* is not good law because it relied on authority overturned by later courts. (See *Van Pembrook, supra,* 380 N.W.2d at p. 68; *DuBroff v. DuBroff* (5th Cir. 1987) 833 F.2d 557, 561; *Chapman v. Aetna Finance Co.* (5th Cir. 1980) 615 F.2d 361, 363.) Because we decline to follow *Van Pembrook,* we need not address Insurers' assertion.

founded.' [Citation.] The Full Faith and Credit Clause does not compel 'a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate.' [Citations.] Regarding judgments, however, the full faith and credit obligation is exacting. A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land. For claim and issue preclusion (res judicata) purposes, in other words, the judgment of the rendering State gains nationwide force." (Fn. omitted.)

—*Thomas v. Washington Gas Light Co.* (1980) 448 U.S. 261, 270 [65 L.Ed.2d 757, 100 S.Ct. 2647]: "It has long been the law that 'the judgment of a state court should have the same credit, validity, and effect, in every other court in the United States, which it had in the state where it was pronounced.' [Citations.]"

—*Martin v. Martin* (1970) 2 Cal.3d 752, 761, footnote 13 [87 Cal.Rptr. 526, 470 P.2d 662]: As a "general principle . . . the validity and effect of a judgment of a sister state are governed by the law of the state where the judgment was rendered."

—*Gagnon Co. Inc. v. Nevada Desert Inn* (1955) 45 Cal.2d 448, 453 [289 P.2d 466]: "Here we have a judgment (the Nevada judgment) of dismissal with prejudice, rendered by the court on a motion therefor by plaintiff. Whether such a judgment is a bar—res judicata—as to another action on the same cause in this state is controlled by Nevada law."

—*Riley v. New York Trust Co.* (1942) 315 U.S. 343, 349 [86 L.Ed. 885, 62 S.Ct. 608]: The full faith and credit "clause compels that controversies be stilled, so that, where a state court has jurisdiction of the parties and subject matter, its judgment controls in other states to the same extent as it does in the state where rendered."

—California's codification at Code of Civil Procedure section 1913 of the judgment portion of the full faith and credit clause states: "[T]he effect of a judicial record of a sister state is the same in this state as in the state where it was made . . . ."

Second, appellants' asserted distinction between procedural and substantive law in full faith and credit jurisprudence, in which counterclaims fall on the procedural side, does not overcome the expansive reading the law compels for the clause. The full faith and credit clause obligates California to enforce the Missouri judgment to the same effect as if Insurers sought the judgment's enforcement in Missouri. (See also Code Civ. Proc., § 1913.) Framing the

question before us as the effect a Missouri court would give the Missouri judgment, the procedural or substantive nature of Missouri's compulsory counterclaim rule is irrelevant because—as we discuss further below—a plain reading of Missouri's counterclaim rule shows Missouri would bar appellants' counterclaims since appellants did not pursue them during Insurers' declaratory relief action. (Rule 55.32(a) ["**Compulsory Counterclaims.** A pleading shall state as a counterclaim any claim that at the time of serving the pleading the pleader has against any opposing party . . . ."].)

Examples abound of forum courts attaching little, if any, significance to the procedural-substantive distinction appellants urge for counterclaims. For example:

—*R.G. Financial Corp. v. Vergara-Nunez* (1st Cir. 2006) 446 F.3d 178, 182–185 held full faith and credit principles obligated a federal court to give a state court judgment the full effect the judgment would receive under the law of the state that rendered the judgment. In that case, the federal court applied the state court judgment to bar a foreclosed homeowner's claim for violation of lending laws because the homeowner did not pursue the violations as counterclaims in earlier foreclosure proceedings.

—In *Noel v. Hall* (9th Cir. 2003) 341 F.3d 1148, 1166–1167, the court rested on full faith and credit principles to apply a state's compulsory counterclaim law to bar a later action.

—In *Conopco, Inc. v. Roll Internat.* (2d Cir. 2000) 231 F.3d 82, 87–89, full faith and credit principles obligated a New York federal court sitting in diversity to apply California's compulsory counterclaim law to bar a counterclaim in a later action.

—*Brinker v. Superior Court* (1991) 235 Cal.App.3d 1296, 1300 [1 Cal.Rptr.2d 358] involved finality for res judicata purposes of a New Jersey judgment in California. California requires that a judgment be final in order to have res judicata effect, but under California law a judgment for which the right to appeal exists is not final. In New Jersey, however, a judgment is final even if the right to appeal remains. *Brinker* concluded full faith and credit principles obligated California to honor the res judicata effect of a New Jersey judgment for which the right to appeal existed because it was final under New Jersey law. (See also *Thorley v. Superior Court* (1978) 78 Cal.App.3d 900, 906–907 [144 Cal.Rptr. 557] [Utah judgment res judicata in Cal. although right to appeal remained because Utah deemed judgment final for res judicata purposes].)

Appellants' reliance on *Kahn v. Berman* (1988) 198 Cal.App.3d 1499, 1505–1506 [244 Cal.Rptr. 575] for their substantive-procedural distinction is

unavailing. There, a Nevada judgment creditor perfected a judgment lien in Nevada. Attempting to satisfy its judgment by executing against property in California, the judgment creditor argued that its perfection of its Nevada lien under Nevada law entitled it to move against the California property without complying with California's procedures for obtaining a lien; to require it to satisfy California procedures, the judgment creditor asserted, violated California's obligation under the full faith and credit clause to honor the Nevada judgment. The Court of Appeal disagreed, finding the judgment creditor was obligated to comply with California law in executing against California property. *Kahn* does not help appellants because it addressed procedures for enforcing a judgment where the judgment's scope was not in dispute; here, however, the scope of the Missouri judgment, and whether it reaches appellants' counterclaims, is the central question on appeal.

### 2. Appellants' California Claims Were Compulsory Counterclaims in Missouri[6]

Under Missouri's compulsory counterclaim rule, failure to raise a claim in an earlier proceeding where the claim could have been raised ordinarily forfeits the claim in a later proceeding. Rule 55.32 states in part: "A pleading shall state as a counterclaim any claim that at the time of serving the pleading the pleader has against any opposing party . . . ." "The compulsory counterclaim rule is simply the codification of the principles of *res judicata* and collateral estoppel. Claims and issues which could have been litigated in a prior adjudicated action are precluded in a later action between the same parties or those in privity with them." (*Beasley v. Mironuck* (Mo.Ct.App. 1994) 877 S.W.2d 653, 656 (*Beasley*).)

Appellants contend Missouri's compulsory counterclaim rule did not apply to their California claims for bad faith, unfair business practices, and breach of the insurance policies because those claims did not exist when Insurers filed their Missouri complaint.[7] Appellants assert their California claims arose from the damage their health suffered when Insurers refused to pay policy benefits, and they only discovered that damage following medical examinations after Insurers filed their Missouri complaint.

Appellants' contention is unavailing. The fact, rather than the amount or degree, of damages triggers a legal claim. (*Lane v. Non-Teacher School*

---

[6] Insurers contend appellants "effectively conceded" their California claims were compulsory counterclaims in Missouri. Because we find no explicit concession in the record, we address the merits of appellants' contention that their counterclaims were not compulsory under Missouri law.

[7] Although appellants suggest the key date is when Insurers filed their complaint, the Missouri counterclaim rule is measured by when appellants filed their answer. (Rule 55.32; see discussion, *post.*)

*Employee Retirement System* (Mo.Ct.App. 2005) 174 S.W.3d 626, 634 [claim accrues when plaintiff can discover fact of damage].) In Missouri, "a claim falls within the limits of the compulsory counterclaim rule if it has 'matured' at the time of the pleading and for this purpose 'matured' has the same meaning as the word 'accrued' in statutes of limitations. [Citation.] Therefore, a counterclaim has accrued and is fully matured when the damage resulting therefrom is sustained and is capable of ascertainment. [Citations.] 'Ascertainment' refers to the fact of damage rather than to the precise amount." (*Beasley, supra,* 877 S.W.2d at pp. 655–656; see *Stevinson v. Deffenbaugh Industries* (Mo.Ct.App. 1993) 870 S.W.2d 851, 858.) Perceived correctly, appellants' California claims do not allege Insurers physically injured appellants as in, say, assaulting them or as might arise from, for example, a car accident, medical malpractice, or slip and fall. Rather, appellants claim Insurers denied them contractually promised insurance benefits, the denial of which appellants allege damaged their health because they could not otherwise afford the medical care they needed; as appellants' counsel told the trial court here, "the gravamen of what this case is about is a tortious breach of contract and [unfair competition] claim." Appellants' cause of action for denial of benefits accrued when Insurers stopped paying benefits under the policies in September 2007, more than half a year before Insurers filed their Missouri complaint and more than a year before appellants filed their answer and counterclaim for breach of contract. Indeed, appellants rested their later-withdrawn counterclaim on the post-September 2007 denial of benefits, alleging appellants incurred more than one-third of a million dollars in unreimbursed medical expenses because of Insurers' refusal to honor the policies. Thus, appellants' claims existed when they answered Insurers' complaint, thereby falling under Missouri's compulsory counterclaim rule. (Rule 55.32 ["pleading shall state as a counterclaim any claim that at the time of serving the pleading the pleader has against any opposing party . . . ."].)

Appellants also contend their counterclaims were not compulsory because Insurers' declaratory relief action sought to terminate insurance benefits, whereas appellants sought recovery for damage to their health. Thus, according to appellants, Insurers' claims and their claims did not involve the same transaction, which the compulsory counterclaim rule requires. (Rule 55.32 [a counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim"].) In support of the narrow definition of "same transaction" that they urge, appellants cite *Jack Brandt, Ltd. v. Morris* (Mo. 1966) 400 S.W.2d 417 (*Jack Brandt*), a decision of questionable validity under current Missouri law. In *Jack Brandt,* a furniture seller sued a buyer to recover payment for furniture. The seller also sued to recover payment for interior decorating and construction services. The buyer countersued, alleging

the furniture was defective and the decorating and construction services shoddy. Rendering a decision only on the seller's claims, the court entered judgment for the seller. When the buyer tried to appeal from the judgment for the seller, the appellate court dismissed the appeal as premature because the judgment had not disposed of all pending issues, namely the buyer's counter-claims. Pointing to the trial record, the appellate court noted it did "not affirmatively appear [from the record] that the [buyer's] counter-claim arose out of the same transaction" as the seller's claims. (*Id.* at p. 418.)

■    Appellants urge us to adopt *Jack Brandt*'s narrow interpretation of "same transaction." We decline the invitation because regardless of how narrowly Missouri may have decades ago defined "same transaction" (*Jack Brandt* is a 45-year-old decision), Missouri defines the term broadly today: "The clear function of the [compulsory counterclaim] rule is to serve as 'a means of bringing all logically related claims into a single litigation, through the penalty of precluding the later assertion of omitted claims.' [Citation.] It is not necessary that the opposing claims be conditional upon each other. [Citation.] And the term 'subject matter' does not . . . limit the scope of compulsory counterclaims to only those claims which are of the same nature or seek the same relief. [Citation.] Rather, the subject matter of the opposing party's action more appropriately 'describes the physical facts, the things real or personal, the money, lands, chattels, and the like, in relation to which the suit is prosecuted.' [Citation.] Obviously, then, 'transaction' within the meaning of [Missouri's compulsory counterclaim rule] is to be applied in its broadest sense. [Citation.]" (*State ex rel. J.E. Dunn v. Schoenlaub* (Mo. 1984) 668 S.W.2d 72, 75.)

Appellants' California claims and Insurers' Missouri claims arose from one set of insurance policies and are "logically related" (*State ex rel. J.E. Dunn v. Schoenlaub, supra,* 668 S.W.2d at p. 75): Insurers sought to rescind those policies; appellants sought to enforce them. Missouri law makes clear that the purpose of its compulsory counterclaim rule is " 'to serve as "a means of bringing all logically related claims into a single litigation, through the penalty of precluding the later assertion of omitted claims." ' [Citation.]" (*Joel Bianco Kawasaki v. Meramec Valley Bank* (Mo. 2002) 81 S.W.3d 528, 532, italics omitted.) Appellants' contention that Missouri's compulsory counter-claim rule does not apply here thus fails.

■    Appellants also contend Missouri's rules for declaratory judgments relieved them of any obligation to file their claims in Missouri. They cite Missouri Supreme Court Rules, rule 87.10, which states: "Further relief based on a declaratory judgment or decree may be granted whenever necessary or

proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree to show cause why further relief should not be granted forthwith." Noting that the rule provides for "further relief," appellants take that phrase to encompass later-filed counterclaims. Appellants' interpretation of "further relief" stretches the concept beyond what is reasonable. Read as a whole, the rule governs circumstances in which a party seeks to enforce rights previously adjudged in the party's favor by a declaratory relief action. The rule cannot be reasonably construed to define as "further relief" the revival of counterclaims that existed at the time of the declaratory relief action which a party did not pursue in the earlier action.

*Beasley, supra*, 877 S.W.2d 653 is instructive on Missouri's treatment of counterclaims in declaratory relief actions. Five homeowners in a several-hundred-house subdivision in Missouri filed a declaratory relief action challenging the levy of a special assessment on the homeowners by the subdivision's trustees. The trustees prevailed in the declaratory relief action when the Missouri court upheld the special assessment. (*Id.* at p. 654.) The subdivision thereafter imposed a new levy on the five homeowners to recover the subdivision's attorney's fees and costs incurred in the declaratory action. (*Id.* at p. 655.) The homeowners refused to pay the new levy and convinced a Missouri court to void it. Relying on Missouri's compulsory counterclaim rule, the Missouri court explained the trustees' claim for fees and costs arose under Missouri's compulsory counterclaim rule at the outset of the declaratory relief action and should have been sought in that proceeding, not in a later action. Rejecting the trustees' argument that the compulsory counterclaim rule did not apply because the trustees did not know at the beginning of the declaratory action how much the trustees would incur in attorney's fees and costs, the court explained: "The moment the trustees consulted attorneys to undertake the defense of the original declaratory judgment action, their claim for attorney's fees and expenses [under the subdivision's governing document] came into existence. [Missouri's compulsory counterclaim rule,] Rule 55.32(a) required that this claim be asserted at the time their pleading was served against [the homeowners]. The fact that the full amount of the fees and expenses could not be determined until the time of submission of the case for final decision does not render Rule 55.32(a) inapplicable. In any case where a party is entitled to recover attorney's fees, the claim for such recovery must be pleaded from the outset even though the amount of the

entitlement continues to grow throughout the proceedings. The failure to assert such a claim prior to judgment precludes any attempt to present the claim in a later action." (*Id.* at p. 656.)

■ *Beasley* involved litigation costs but its analytical focus on the "fact," instead of the amount of damage (*Lane v. Non-Teacher School Employee Retirement System, supra,* 174 S.W.3d at p. 634), applies here. Appellants knew Insurers' refusal to pay benefits injured them, even if they may not have known the full extent of those injuries to their pocketbook or health. Because they knew Insurers had injured them, appellants' claims against Insurers were compulsory counterclaims which they forfeited when they did not pursue them in Missouri. And, as was the case in *Beasley,* that Insurers initially filed a declaratory relief action, and not a claim for damages, did not exempt appellants from complying with the compulsory counterclaim rule.[8]

### 3. Appellants' Policy Arguments Against Extending Full Faith and Credit to Missouri's Judgment

■ Appellants contend Missouri does not recognize a tort claim for breach of the implied covenant of good faith and fair dealing for insurance contracts. Hence, according to appellants, application of full faith and credit principles to the Missouri judgment denies them relief to which they would be entitled in a California court. At bottom, appellants seek a public policy exception to the full faith and credit clause, but they cite no authority and little, if any, authority exists·for such an exception. (*Baker v. General Motors Corp., supra,* 522 U.S. at p. 233 ["our decisions support no roving 'public policy exception' to the full faith and credit due *judgments*"]; *Estin v. Estin* (1948) 334 U.S. 541, 545–546 [92 L.Ed. 1561, 68 S.Ct. 1213].) "California law is clear that the differing public policy or laws of the enforcing state cannot contravene the full faith and credit clause of the Constitution. As has been repeatedly stated, California must, regardless of policy objections, recognize the judgment of another state as res judicata . . . ." (*World Wide Imports, supra,* 145 Cal.App.3d at p. 1011.)

■ Appellants also contend that enforcing the Missouri judgment encourages insurance companies to forum shop to avoid their obligations under California law. In what appellants describe as a "can't lose" litigation strategy for insurers, an insurance company may file a lawsuit in a state with laws

---

[8] Rule 55.32(a) contains three exceptions to the rule requiring the filing of mandatory counterclaims: (1) another action was pending; (2) quasi in rem proceedings; and (3) actions to approve a settlement. Missouri law thus differs from California which, by statute (Code Civ. Proc., § 426.60), states that the mandatory cross-complaint rule does not apply in a declaratory relief action.

more favorable to insurers than California and even if, as here, the insurer loses in the other state, that state's compulsory counterclaim law may cut off a policyholder's right to pursue claims in a California court. (See, e.g., *Allan Block Corp. v. County Materials Corp.* (7th Cir. 2008) 512 F.3d 912, 916 [noting stratagem of party using declaratory relief action in one state as a "device[] for thwarting the choice of forum by [one's opponent], even though, in many declaratory judgment suits . . . the plaintiff is seeking declaratory relief in order to defeat preemptively a claim by" the other party].) We have no ready answer to the problem appellants describe, other than to observe that, among other considerations, constitutional safeguards requiring personal jurisdiction and a policyholder's minimal contacts with a state other than California will constrain an insurance company's potential forum shopping. Moreover, even when proceedings in another state may satisfy those constitutional safeguards, a policyholder may move for dismissal of those proceedings on forum non conveniens. (See, e.g., *Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751 [1 Cal.Rptr.2d 556, 819 P.2d 14] [Cal. recognizes forum non conveniens doctrine]; *State ex rel. Wyeth v. Grady* (Mo. 2008) 262 S.W.3d 216, 219–220 [Mo. recognizes same doctrine];[9] see also 40 Mo. Practice, Mo. Summary Judgment and Motions (2009 ed.) § 4.7 [discussion of Mo. cases dismissing actions on grounds of forum non conveniens].) But equally without a ready answer are appellants, who fail to address that they arguably had the right under conflict of law principles to ask the Missouri court to apply substantive California law if they had pursued their counterclaims in Missouri. (Mo. Supreme Ct. Rules, rule 52.03 ["Whenever a claim exists under the law of another state, a civil action thereon may be brought in this state by . . . [¶] . . . the persons entitled to the proceeds of such claim if they are authorized to bring such action by the laws of said other state . . . ."]; see also *Burt on Behalf of McDonnell Douglas v. Danforth* (E.D.Mo. 1990) 742 F.Supp. 1043, 1046–1047, 1052 [federal court sitting in diversity in Mo. applied Mo. choice-of-law rules to apply Cal.'s unfair competition law]; *Goede v. Aerojet General Corp.* (Mo.Ct.App. 2004) 143 S.W.3d 14, 24–25 [Mo. trial court applied Cal. wrongful death tort law].) All that being said, appellants' alarm about an insurance company abusively forum shopping for a state with laws more to the insurer's liking calls for a public policy exception to the full faith and credit clause, an exception the law does not recognize.

---

[9] "Although a plaintiff has the right to choose any forum where there is proper jurisdiction and venue . . . , the doctrine of *forum non conveniens* was developed to prevent a plaintiff from taking advantage of liberal venue statutes to 'vex, oppress, or harass' a defendant . . . . [Citation.] The doctrine allows, and in some circumstances requires, the trial court to dismiss a suit if it is filed in a 'manifestly inconvenient' forum." (*State ex rel. Wyeth v. Grady, supra,* 262 S.W.3d at pp. 219–220.)

## DISPOSITION

The judgment is affirmed. Each side to bear its own appellate costs.

Flier, J., and Grimes, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 27, 2011, S193396. Werdegar, J., did not participate therein.