Filed 3/1/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LGCY POWER, LLC, <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF FRESNO COUNTY, <br><br> Respondent; <br><br> MICHAEL JED SEWELL, <br><br> Real Party in Interest. | F082353 <br><br> (Super. Ct. No. 20CECG01508) <br><br><br> **OPINION** |

ORIGINAL PROCEEDINGS; in mandate.  D. Tyler Tharpe, Judge.

Alston & Bird, Jesus M. Jauregui, Kaitlin H. Owen and Newman A. Nahas, for Petitioner.

No appearance for Respondent.

Snell & Wilmer, Mark O. Morris, Jing Hua, Cameron J. Cutler and Sarah A. Hafen, for Real Party in Interest.

-ooOoo-

California Labor Code section 925 went into effect on January 1, 2017, and provides that employers cannot force an employee who resides and works primarily in California to agree, as a condition of employment, to:  (1) litigate a claim arising in

California in a forum outside of California; or (2) waive the employee's right to the substantive protection of California law with respect to a controversy arising in California. (Labor Code, § 925, subd. (a)(1)—(2).)[1] Any provision in a contract that violates these terms is voidable by the employee, and if a violative provision is rendered void at the employee's request, the matter must be adjudicated in California under California law. (§ 925, subd. (b).)

This writ proceeding requires us to address the interplay between section 925 and California's compulsory cross-complaint statute (Code Civ. Proc., § 426.30), as well as the interplay between section 925 and the Full Faith and Credit Clause of the United States Constitution (U.S. Const., art IV, § 1).[2]

The petitioner in this writ proceeding, LGCY Power, LLC ("LGCY"), is a Utah limited liability company formed in Delaware and headquartered in Salt Lake County, Utah. It markets and sells residential solar energy systems in various parts of the western United States. Michael Jed Sewell, the real party in interest, is a California resident who worked for LGCY as a sales representative, and later a sales manager, from January 2015 to August 2019.

Around August 2019, Sewell and six other former LGCY executives and managers left LGCY and formed a competing solar company. LGCY filed suit in Utah state court against all seven of them, alleging various causes of action including breach of their employment agreements with LGCY, which contained noncompetition, non-solicitation, and confidentiality provisions.

Most of the defendants, but not Sewell, filed a joint cross-complaint in the Utah action alleging claims including LGCY's breach of their employment agreements and

---

[1] Labor Code section 925 will be referred to as "section 925."

[2] The Full Faith and Credit Clause of the United States Constitution will sometimes be referred to as "the Clause."

failure to pay wages and commissions.  Rather than join this cross-complaint, Sewell filed a complaint in Fresno County Superior Court alleging virtually identical claims as those of his codefendants in their Utah cross-complaint.

LGCY demurred to Sewell's complaint, contending his causes of action were barred by both California and Utah's compulsory cross-complaint statutes, which both require that a defendant bring any related causes of action he or she has against the plaintiff in a cross-complaint.  (Code Civ. Proc., § 426.30, subd. (a); Ut. Rules Civ. Proc., rule 13(a).)[3]  The superior court overruled the demurrer, concluding section 925 provided an exception to Code of Civil Procedure section 426.30, subdivision (a), and thus Sewell was not precluded under California law from bringing his claims in California despite there being a pending related suit in Utah.

LGCY brings this petition for a writ of mandate challenging the Fresno County Superior Court's order overruling its demurrer.  LGCY requests we issue a writ of mandate directing the superior court to vacate its order overruling the demurrer and enter a new order sustaining the demurrer.

We are required to answer two related questions of first impression in this opinion.  First, does section 925 provide an exception to California's compulsory cross-complaint statute (Code Civ. Proc., § 426.30) such that an employee who comes within section 925's purview may file a complaint in California alleging claims that are related to the causes of action their employer has filed against them in a pending action in a sister state?  We conclude the answer to this question is yes.

Second, if a related action was filed first and is still pending in a sister state (here, Utah), does the Clause *compel* a state court (here, California) to extend credit to and

---

[3] We will refer to Utah Rules of Civil Procedure, rule 13(a) as "Rule 13(a)."  With this one exception, all statutory references are to California Codes.

3.

apply the sister state's compulsory cross-complaint statute? We conclude the answer to this question is no.

LGCY has not demonstrated that the Fresno County Superior Court erred in overruling its demurrer, and we therefore deny its petition.

**FACTS**

**I.     Background**

LGCY is a Delaware limited liability company with its principal place of business in Utah. LGCY is a certified partner of a company called Sunrun Solar which markets and sells residential solar energy systems in various parts of the western United States, primarily through direct door-to-door sales. LGCY hires an extensive number of sales managers and representatives. The sales managers and representatives are required to sign comprehensive employment agreements which include noncompetition, non-solicitation, and confidentiality provisions.

Sewell joined LGCY in January 2015 and signed a "Solar Representative Agreement" with LGCY that month. The agreement stated Sewell was hired as a "solar sales representative in such geographic area ("Area") as the Company may determine to sell solar panels, solar panel-related products and services offered by the Company[.]" Sewell was to be compensated as set forth in a compensation schedule attached to the agreement. The agreement provided Sewell would be an independent contractor and not an employee.

The agreement also contained a provision pertaining to choice of law and forum selection issues. We will refer to this provision as "the Provision." Regarding choice of law, the Provision stated the agreement "shall be governed by the laws of State of Utah, without giving effect to any choice of law provision or rule (whether in the State of Utah or any other jurisdiction) that would cause the application of the laws of any jurisdictions other than the State of Utah." As for the litigation forum, the Provision stated that jurisdiction and venue for any legal action arising out of any of the subject matter

4.

addressed in the agreement "shall be in the state or federal Utah court of competent jurisdiction." The record on appeal contains only Sewell's employment agreement, so it is unknown precisely how similar it was to any of LGCY's other employment agreements.

Around August 2019, Sewell and several other executives and managers left LGCY and formed a solar sales company, Sunder Energy, LLC ("Sunder"), in direct competition with LGCY. Sunder was formed in Delaware and its principal executive office is in South Jordan, Utah, which is in Salt Lake County.

## II.    Utah litigation

On September 23, 2019, LGCY filed a complaint in state court in the Third Judicial District Court, Salt Lake County, State of Utah, captioned as *LGCY Power, LLC v. Nielsen et al,* Case No. 190907492, against Sewell and six other individuals engaged in the Sunder enterprise. The complaint alleged causes of action against the defendants for breach of their employment agreements, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, breach of the Utah Uniform Trade Secrets Act (Utah Code Ann. § 13-24-1, et seq.), intentional interference with contract and prospective economic relations, and declaratory relief. All of the causes of action were against all defendants, except the declaratory relief claim, which was against only one of the defendants (not Sewell).

The gravamen of LGCY's claims was that the defendants, acting in concert, breached contractual obligations and fiduciary duties during and after the time they worked for LGCY, misappropriated LGCY's trade secrets, and tortiously interfered with LGCY's existing and prospective contractual relationships. The defendants supervised LGCY's sales operations in a number of states, including Arizona, Nevada, California, and Texas.

The complaint further averred all seven defendants signed employment agreements when they were hired by LGCY, and each of their agreements contain the

5.

same noncompetition, non-solicitation, confidentiality clauses, and choice of law and venue provisions. It was also alleged that each of the defendants had managerial or executive responsibilities.

On November 18, 2019, Sewell and the other named defendants filed a joint answer to the complaint. On February 11, 2020, four of the defendants—excluding Sewell—filed a joint cross-complaint in the Utah court alleging claims including breach of contract and failure to pay wages owed under the respective laws of the states of Utah, Arizona, Nevada, and Texas.[4] The cross-complaint also alleged LGCY failed to pay for commissions owed under each defendant's respective employment agreement.

## A. Motion to dismiss the California defendants

Before the four defendants filed their joint cross-complaint, on December 13, 2019, Sewell and defendant Michael Gutschmidt, who both resided in California at that time, filed a motion to dismiss the two of them as defendants on the stated grounds of forum non conveniens and lack of personal jurisdiction. Relevant to both grounds, Sewell and Gutschmidt ("California defendants") submitted declarations stating that they both had been living and working in California for many years (Sewell since January 2016 and Gutschmidt since April 2016), had never made a sale in Utah for LGCY, and traveled to Utah two or three times a year for business meetings and rarely traveled to Utah for any other reason.

The California defendants also argued in their motion that the Utah court should give "little deference" to the forum selection clause in their employment agreements because LGCY's decision to sue in Utah "seeks to circumvent the substantial protections

---

[4] At all times, all seven defendants were represented by the same counsel, even though individual defendants, including Sewell, took different actions in their defense of the lawsuit.

Utah Rule 13(a) uses the term "counterclaim" to refer to what Code of Civil Procedure section 426.30 calls a "cross-complaint."

6.

that California law affords its employees and independent contractors." The two defendants discussed the applicability of California Business and Professions Code section 16600 and Labor Code section 925.

Business and Professions Code section 16600 provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." (Bus. & Prof. Code, § 16600.)

Labor Code section 925 provides in full:

"(a) An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following:

"(1) Require the employee to adjudicate outside of California a claim arising in California.

"(2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California.

"(b) Any provision of a contract that violates subdivision (a) is voidable by the employee, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California and California law shall govern the dispute.

"(c) In addition to injunctive relief and any other remedies available, a court may award an employee who is enforcing his or her rights under this section reasonable attorney's fees.

"(d) For purposes of this section, adjudication includes litigation and arbitration.

"(e) This section shall not apply to a contract with an employee who is in fact individually represented by legal counsel in negotiating the terms of an agreement to designate either the venue or forum in which a controversy arising from the employment contract may be adjudicated or the choice of law to be applied.

"(f) This section shall apply to a contract entered into, modified, or extended on or after January 1, 2017." (§ 925.)

7.

The California defendants cited to Utah case law purportedly holding that an "unfair or unreasonable" forum selection provision may be set aside (*Prows v. Pinpoint Retail Systems, Inc.* (Utah 1993) 868 P.2d 809, 812) and that such a provision is unfair or unreasonable if it contravenes strong public policy of either the forum state or the state preferred by the defendant. (*Jacobsen Const. Co., Inc. v. Teton Builders* (Utah 2005) 106 P.3d 719, 724.) The defendants argued the court should give no deference to LGCY's decision to sue in Utah in light of California's public policy against restrictive employment covenants and forum selection causes in employment agreements.

LGCY filed an opposition to all the grounds raised. In their reply, the California defendants raised the additional argument that the Utah court should apply principles of comity and defer to California's strong public policy against forum selection clauses.

On March 30, 2020, the Utah court denied the motion to dismiss. The court concluded Utah was an appropriate forum under Utah's forum non conveniens doctrine and stated that "[t]he question of which state's law applies is not a proper consideration in the forum non conveniens analysis." The court also ruled it had personal jurisdiction over the California defendants because there was a "rational nexus" to exercise jurisdiction over them based, in part, on their consenting to Utah's jurisdiction in the forum selection clause of their employment agreements. The court also stated it was not ruling on the comity issue because it was belatedly raised in the reply brief, and not ruling on the choice of law question. However, the court stated the California defendants could reassert both of those issues in a later filing.

B.      **California defendants' summary judgment motion**

On June 18, 2020, Sewell and Gutschmidt filed a motion for summary judgment in the Utah action. They argued that because they are California residents, the Utah court should invoke principles of comity and apply California law with respect to the two of them. They first argued that the noncompetition clauses of their respective employment agreements are void under Business and Professions Code section 16600. Second, and

8.

directly relevant to this petition, the California defendants attempted to invoke the provisions of section 925. They noted they each originally signed their agreements before January 1, 2017, but argued their agreements were modified after that date when they were promoted. They asserted their promotions came with new job responsibilities and increased compensation. In addition to their argument based on comity principles, they contended once again they lacked sufficient minimum contacts with Utah to subject them to personal jurisdiction in Utah for purposes of that lawsuit.

LGCY contested the arguments made by the California defendants and asserted facts supporting jurisdiction in Utah. Further, in arguing that section 925 did not apply, LGCY contended the employment agreements were executed before 2017, the agreements were not duly modified as they contained a provision that any modifications to the agreements must be made in writing, and the California defendants were independent contractors, not employees.

On October 14, 2020, the Utah court denied the summary judgment motion in a brief order. The court stated it was denying the motion for the reasons discussed on the record at the motion hearing, but the parties have not included a reporter's transcript of that hearing in this proceeding. However, the court's order did state that the court concluded "the application of comity as requested in the Summary Judgment Motion is not appropriate in this case." The order also stated the court "did not reach any choice-of-law issues and does not make any choice-of-law determinations[.]"

## II. California litigation

### A. Sewell action – Fresno County Superior Court

Sewell filed a complaint against LGCY in Fresno County Superior Court on May 22, 2020, alleging, among other things, claims of breach of contract, unjust enrichment, and California wage claims, and requesting declaratory relief. He avers that as a regional manager for LGCY he was misclassified as an independent contractor and LGCY failed to pay him roughly $80,000 in commissions.

9.

On June 30, 2020, LGCY demurred to the complaint, claiming Sewell's claims were compulsory cross-complaints under Code of Civil Procedure section 426.30 and thus barred because they were not raised in the pending Utah action. LGCY also added in the memorandum of points and authorities in support of its demurrer that Sewell's claims were also barred by Utah's compulsory cross-complaint statute, Rule 13(a). LGCY noted Sewell filed his complaint in Fresno County three months after the other defendants filed the cross-complaint in the Utah action, and that Sewell's complaint and the Utah cross-complaint allege the same causes of action.

Code of Civil Procedure section 426.30, subdivision (a) provides that "if a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded." Rule 13(a) similarly provides that "[a] pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against the opposing party if the claim … arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and does not require joining a party over whom jurisdiction cannot be acquired.

LGCY argued that since Sewell's claims against LGCY arise from his contractual relationship with LGCY—the same contractual relationship from which LGCY's claims arose against him—Sewell was required under both California and Utah's compulsory cross-complaint statutes to assert his claim in a cross-complaint in the Utah action. Sewell's failure to do so, LGCY contends, barred his claims.

On November 4, 2020, Sewell filed an opposition to the demurrer arguing that section 925 created an applicable exception to Code of Civil Procedure section 426.30. He further argued he lacked sufficient minimum contacts with Utah to establish personal jurisdiction over him there.

On December 10, 2020, the superior court overruled the demurrer in its entirety. First, the court noted Code of Civil Procedure section 426.30, subdivision (a), is prefaced with the phrase "[e]xcept as otherwise provided by statute" and therefore section 925, if it applied in this case, would provide an exception to California's compulsory cross-complaint statute. The court next determined that even though Sewell entered into the employment agreement prior to 2017, Sewell's complaint alleges the contract was modified by a fully executed oral modification after January 1, 2017, when Sewell received a change in compensation after his promotion. Accepting the allegations of Sewell's complaint as true for purposes of the demurrer, the court determined section 925 applied and provided an exception to the compulsory cross-complaint rule codified in Code of Civil Procedure section 426.30. The court explained:

> "[LGCY] also argues that Labor Code section 925 does not create an exception to the compulsory cross-complaint statute. This argument is not persuasive. To hold that Section 925 is not an exception under Code of Civil Procedure section 426.30 would render Section 925 meaningless[,] thereby violating the rules of statutory construction. When courts interpret a statute, the fundamental task is to determine the Legislature's intent so as to effectuate the law's purpose. (See *City of San Jose v. Superior Court* (2017) Cal.5th 608, 616.) It is evident from the text of Section 925 that the statute's intent is to provide a California-based employee with a California forum to litigate employment-related claims if the terms of his or her employment change on or after January 1, 2017. (See *Midwest Motor Supply Co. v. Superior Court of Contra Costa County* [(2020)] 56 Cal.App.5th [702 (*Midwest Motor Supply*)].)

> "The demurrer is overruled."

**B.     Gutschmidt action – San Diego County Superior Court**

On May 27, 2020, Gutschmidt filed his own separate action in San Diego County Superior Court alleging, among other things, claims of breach of contract, unjust enrichment, and California wage claims, and requesting declaratory relief. Namely, Gutschmidt contends that as a regional manager for LGCY he was misclassified as an independent contractor and LGCY failed to pay him roughly $70,000 in commissions.

11.

On December 16, 2020, the superior court sustained LGCY's demurrer to the Gutschmidt action without leave to amend. This ruling was made six days after the Fresno County Superior Court's ruling that is the basis of this writ petition. We discuss it because it provides useful context.

First, the San Diego court found Gutschmidt's claims to be compulsory counterclaims under either Utah or California statutory law and thus were required to be asserted in the Utah action. The court declined to accept either of Gutschmidt's arguments that (1) he was not required to assert the crossclaims based on section 925, and (2) the Utah court lacked personal jurisdiction over him.

With regard to the application of section 925, the court explained that even were it applicable, it would make the employment agreement voidable, not void, and there was no evidence the parties took any action to exercise the option to void the agreement:

> "The language here is permissive: providing only that certain contractual provisions are 'voidable' if requested by an employee in a dispute that is covered by the statue. Cal. Lab. Code § 925(b). Section 925 does not, by its terms, prevent a California employee from pursuing claims in any jurisdiction.

> "Further, nothing in the language of Section 925 overturns principles of law requiring the adjudication of related claims among parties in a single action. Cal. Civ. Pro. Code § 426.30(a). There is no authority that Section 925 is an exception to California's compulsory cross-complaint statute or to the compulsory counterclaim laws of any other state.

> "Under the compulsory cross-complaint statute, Section 426.40(b) instructs that the compulsory cross-complaint rule does not apply if the other court is 'prohibited … from entertaining the cause of action not pleaded.' Cal. Civ. Pro. Code § 426.40(b) (emphasis added). Section 925, by its plain terms, does not prohibit Gutschmidt from pursing his claims against LGCY in Utah. Gutschmidt offers no reason why he cannot pursue his claims against LGCY in the Utah action."

12.

The court also deferred to the Utah's court's finding that Gutschmidt is subject to personal jurisdiction in Utah.  Accordingly, the San Diego Superior Court ordered Gutschmidt's entire action dismissed without prejudice.

## III.     Writ petition filed

On February 9, 2021, LGCY filed the instant petition challenging the superior court's ruling overruling the demurrer.  The petition asserted Sewell's causes of action asserted in the California action are barred as a matter of law for multiple reasons and asked this court to issue a writ of mandate directing the superior court to vacate its ruling overruling the demurrer and to enter a new ruling sustaining the demurrer.

On June 18, 2021, we issued an order staying the superior court proceedings in the California action and directing Sewell to file an informal response to the merits of LGCY's petition.  We asked Sewell to address five issues LGCY raised in its petition, which he did in a filed response to our order, and LGCY then filed a reply to Sewell's response.  We then issued an order to show cause, after which Sewell filed a written return and LGCY filed a reply to the return.

## DISCUSSION

## I.     Standard of review

The decision to sustain or overrule a demurrer is a legal ruling subject to de novo review on appeal.  (*Balikov v. Southern California Gas Co.* (2001) 94 Cal.App.4th 816, 819.)  We likewise review questions of statutory interpretation de novo.  (*Christensen v. Lightbourne* (2019) 7 Cal.5th 761, 771.)

## II.     LGCY's contentions

LGCY contends the trial court erred in overruling the demurrer for two independent and sufficient reasons.  First, it claims the Full Faith and Credit Clause of the United States Constitution required the superior court to give effect to Utah's compulsory cross-complaint statute, under which Sewell's claims would be barred for failing to bring them in the Utah action.

13.

Second, LGCY contends that, notwithstanding that the Clause mandates that Utah law be applied, Sewell's claims are also compulsory counterclaims under California's compulsory cross-complaint statute (Code Civ. Proc., § 426.30, subd. (a)) that are now barred for failure to assert them in Utah. LGCY also contends that section 925 does not provide an exception to California's compulsory cross-complaint statute. Additionally, LGCY contends that even if section 925 did provide an exception to the compulsory cross-complaint statute, various threshold criteria of section 925 were not satisfied here and thus section 925 cannot apply. Specifically, LGCY contends (1) Sewell was an independent contractor as opposed to an employee, (2) Sewell's employment agreement was not entered into or modified after January 1, 2017, and (3) Sewell never obtained a court order rendering the Provision void.

We first will explain how Sewell's claims are not compulsory counterclaims under California law because section 925 provides an exception to California's compulsory cross-complaint statute. This exception allowed Sewell to bring his claims here in California despite there being a related action pending in a sister state. We also will reject LGCY's arguments that there are factual threshold issues regarding the applicability of section 925 that prevent its application to Sewell here. We then will explain how the Clause did not *compel* the superior court to give full faith and credit to Utah's compulsory cross-complaint statute.

### III.     Principles of statutory interpretation

We set forth the pertinent rules of statutory construction that inform our interpretation of section 925 and relevant sections of the Code of Civil Procedure. When interpreting statutory language, " '[w]e begin with the fundamental rule that our primary task is to determine the lawmakers' intent.' " [Citation.] The process of interpreting the statute to ascertain that intent may involve up to three steps. [Citations.] … We have explained this three-step sequence as follows: 'we first look to the plain meaning of the statutory language, then to its legislative history and finally to the reasonableness of a

14.

proposed construction.' " (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1082 (*MacIsaac*).)

"In the first step of the interpretive process we look to the words of the statute themselves. [Citations.] The Legislature's chosen language is the most reliable indicator of its intent because ' "it is the language of the statute itself that has successfully braved the legislative gauntlet." ' [Citation.] We give the words of the statute 'a plain and commonsense meaning' unless the statute specifically defines the words to give them a special meaning." (*MacIsaac, supra,* 134 Cal.App.4th at pp. 1082—1083.) " 'It is axiomatic that in the interpretation of a statute where the language is clear, its plain meaning should be followed.' " (*Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 998 (*Security Pacific*).)

Furthermore, we are not empowered to insert language into a statute, as "[d]oing so would violate the cardinal rule of statutory construction that courts must not add provisions to statutes." (*Security Pacific, supra,* 51 Cal.3d at p. 998.; see also Code Civ. Proc., § 1858 ["[i]n the construction of a statute ..., the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted ...."].) "If the statutory language is clear and unambiguous, our task is at an end, for there is no need for judicial construction. [Citations.] In such a case, there is nothing for the court to interpret or construe." (*MacIsaac, supra,* 134 Cal.App.4th at p. 1083.)

## IV. California statutory law does not bar Sewell's claims

Code of Civil Procedure section 426.30, subdivision (a), provides, "Except as otherwise provided by statute, if a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in another action assert against the plaintiff the related cause of action not pleaded." A "related cause of action" is one that "arises out of the same transaction,

occurrence, or series of transactions and occurrences as the cause of action which the plaintiff alleges in his complaint." (Code Civ. Proc., § 426.10, subd. (c).) "In the breach of contract context, the rule means any claims the defendant has against the plaintiff based on the same contract generally must be asserted in a cross-complaint, even if the claims are unrelated to the specific breach or breaches that underlie the plaintiff's complaint." (*Frog Creek Partners, LLC v. Vance Brown, Inc.* (2012) 206 Cal.App.4th 515, 538; see also *Align Technology, Inc. v. Tran* (2009) 179 Cal.App.4th 949, 960 [employer's claims against former employee for misappropriation of patents were barred by compulsory cross-complaint rule because employer failed to cross-claim against employee in response to employee's prior cross-complaint for wrongful termination and breach of contract because all claims arose out of employment relationship].)[5]

LGCY's claims and Sewell's claims are all based on the same contract, Sewell's employment agreement, and thus are all "related cause[s] of action" under Code of Civil Procedure section 426.10, subdivision (c). Therefore, without considering section 925, Sewell's claims would be compulsory cross-complaints under Code of Civil Procedure

---

[5] The statutes in the article of the Code of Civil Procedure dealing with compulsory cross-complaints (Code of Civ. Proc., § 426.10 et seq.) are silent regarding the application of the doctrine to litigation occurring in other jurisdictions. Sections 426.30 and 426.40 provide exceptions to the compulsory cross-complaint rule but none are applicable to the present situation. The statutory scheme does not apply if "[t]he court in which the action is pending does not have jurisdiction to render a personal judgment against the person who failed to plead the related cause of action." (Code Civ. Proc., § 426.30, subd. (b)(1).) While this may limit the application to courts of specialized jurisdiction, the law would still apply to nearly every federal and state court, as long as the court has personal jurisdiction over the litigant. Likewise, the law does not apply if the court in the first action is "prohibited by the federal or state constitution or by a statute from entertaining the cause of action not pleaded." (Code Civ. Proc., § 426.40, subd. (b).) Based on the language of the compulsory cross-complaint statutes, it is clear the law was intended to apply to courts of other jurisdictions as long as none of the exceptions apply.

While neither party raises an issue with this point, we address it, nonetheless.

16.

section 426.30, subdivision (a). However, section 925 provides an exception to Code of Civil Procedure section 426.30, subdivision (a).

We recognize that section 925 does not reference Code of Civil Procedure section 426.30, nor does it otherwise expressly state that it operates as an exception to the compulsory cross-complaint rules. However, section 925's language conveys that it is intended as an exception to Code of Civil Procedure section 426.30, subdivision (a).

Section 925, subdivision (b), provides that in any instance in which a contractual provision that violates subdivision (a) is rendered void at the employee's request, "the matter *shall* be adjudicated in California and California law shall govern the disputes." (Italics added.) This language clearly evinces a legislative intent that all cases and controversies that fall within section 925's purview be litigated in California. Consistent with this interpretation is the fact that section 925 provides no exceptions to its applicability, even for instances in which the employer has already filed a pending action against the employee in another state.

There will, of course, be instances, as in this case, where the employer will file suit first in a sister state, the employee will move the sister state's court to dismiss the action on section 925 grounds, and the court will deny the employee's motion, thereby keeping the employer's suit pending in the sister state. But the fact that there will be such instances does not make any less clear the California Legislature's intent that all cases and controversies—or at least as many as possible—that fall under section 925 be adjudicated in California. Since section 925 was intended to apply in every case or controversy in which its criteria are satisfied, we conclude it is a statutory exception to Code of Civil Procedure section 426.30, subdivision (a).

LGCY argues that it is significant that section 925 provides that contract clauses that violate subdivision (a) are only "voidable" at the request of the employee, instead of void ab initio. As LGCY contends, "[t]he word 'voidable' here is dispositive." LGCY explains, by citing to long-time California precedent, that voidable contracts do not

17.

become void until (1) a litigant petitions a tribunal to adjudicate the provision void, and (2) the tribunal grants the petition. LGCY cites *Storrs v. Belmont Gold Min. & Milling Co.* (1938) 24 Cal.App.2d 551:

> " 'A voidable act takes its full and proper legal effect unless and until it is disputed and set aside by some tribunal entitled so to do. [Citation.] "Voidable" means subject to be avoided by judicial action of a court of adequate jurisdiction. [Citation.] And a voidable contract is one which is void as to the wrongdoer but not void as to the wronged party unless he elect[s] to so treat it. [Citation.] A voidable contract is one which may be rendered null at the option of one of the parties, but is not void until so rendered." (*Id.* at p. 556.)

LGCY states that Sewell failed to move the Utah court to void the Provision when his counterclaims became due, and no court had ever adjudicated the Provision void. From this, LGCY argues that, when Sewell's claims became due as counterclaims in Utah, section 925 had no effect because one of the conditions precedent to its effect—i.e., that the forum selection clause be rendered void—was not satisfied. From this LGCY concludes "Sewell's claims would have been equally due under California law as under Utah law, and they would have been equally subject to waiver."

This argument is somewhat unclear. However, we perceive LGCY to ultimately be heading toward this conclusion: Sewell's failure to have obtained a court order voiding the Provision before filing his California complaint means that section 925 did not apply to him, and, therefore, section 925 could not provide him an exception to California's compulsory cross-complaint statute in this case.

Before explaining why we disagree with this conclusion, we first would note that LGCY is probably correct that, under section 925, a violative forum selection clause is not void until a court renders a decision ruling it void. That is to say, a violative clause does not become void simply by the employee declaring an intent to void it. We believe this is probably a correct interpretation of section 925 because subdivision (b) requires that a violative "provision [be] *rendered* void at the *request* of the employee[.]" (Italics

18.

added.)  In our view, the most plausible interpretation of this language is that an employee is required to request a court to render a decision that the offending clause is void.

But assuming a court order was required to void the Provision, section 925 did not require Sewell to request or obtain such an order prior to his claims becoming due in Utah or prior to filing his original complaint in California, lest section 925 become unavailable for him.  Indeed, section 925 does not contain time limits.

Since section 925 does not state a time limit for requesting to void a violative provision, we would apply notions of fairness and reasonableness in this situation to determine whether Sewell's request to void was timely.  But before applying these notions here, we first would need to conclude Sewell made such a request to the court and the court did issue such an order.  We conclude that Sewell's complaint contained a clear request to void the Provision and that the court's order overruling the demurrer necessarily entails the court voided the Provision.

Sewell's complaint asserts as part of the claim for declaratory relief that he is "entitled to an order from this Court declaring that" his *entire* employment agreement is void for violating California public policy and "various California statutes," and specifically that the Provision is void for violating Business and Professions Code section 16600 and California public policy.  The complaint includes in the prayer for relief a request that the court declare his entire employment agreement void as well as a request that the court "find" that LGCY and the other named defendants "violated" section 925. The complaint, liberally construed, certainly conveys not just an intent but a request that the Provision be rendered void on section 925 grounds.  Sewell also raised section 925 and the Provision's voidability in his opposition to LGCY's demurrer.  These efforts to apprise the superior court of section 925 and the voidability of the Provision were timely. LGCY has not contended it was prejudiced by Sewell's allegedly belated effort to void the Provision.

LGCY argues that Sewell never "requested" the Provision be voided; instead, in LGCY's view, Sewell assumed he could void the Provision himself by merely expressing an intent that it be void. First, we have just explained that Sewell *did* request that the court void the provision. Second, it would not matter here if Sewell ever made such a request or instead just assumed he could void the Provision himself. This is because while the superior court's order overruling the demurrer did not expressly void the Provision, it necessarily did so by implication. The court concluded section 925 provided an exception to Code of Civil Procedure section 426.30 that applied in this case, and this conclusion necessarily entails that the superior court voided the Provision.

Finally, LGCY argues section 925 cannot provide an exception to Code of Civil Procedure section 426.30, subdivision (a), because of what Code of Civil Procedure section 426.40, subdivision (b), provides. Subdivision (b) states, in part, that the compulsory cross-complaint rule does not apply if "the court in which the action is pending [is] prohibited by the federal or state constitution or by a statute from entertaining the cause of action not pleaded." (Code Civ. Proc., § 426.40, subd. (b).) LGCY argues that section 925 does not prohibit Sewell from pursuing his claims in Utah and thus it cannot constitute an exception contemplated by Code of Civil Procedure section 426.40, subdivision (b). This reasoning is unsound because there is no authority stating that Code of Civil Procedure section 426.40's enumerated exceptions to the compulsory cross-complaint rule are exhaustive.

A.      **Threshold issues bearing on section 925's applicability**

As we have mentioned, LGCY disputes that section 925 applies even as a threshold matter. It contends in its petition for writ of mandate the timing of the contract and the nature of the relationships between LGCY and Sewell remove Sewell from section 925's protections for at least two reasons. First, section 925 only applies to contracts that were "entered into, modified, or extended on or after January 1, 2017," and Sewell's contract was entered into in January 2015 and, LGCY argues, not modified after

20.

January 1, 2017.  Second, section 925 only applies by its terms to an "employee" who enters into an "employment" relationship with an "employer," and LGCY contends Sewell was an independent contractor, not an employee.  Additionally, our June 18, 2021, order for an informal response raised a third threshold question:  Did Sewell ever manifest an intent to void his employment agreement?

We have already answered this third question:  Sewell did timely manifest an intent to void his agreement, and furthermore the superior court's order overruling the demurrer necessarily concluded the Provision is void.  We will now address the two threshold issues LGCY raises.

### 1.    *Sewell's status as an employee*

LGCY asserts in a footnote in its petition for writ of mandate that section 925 only applies by its terms to an "employee," and Sewell was an independent contractor, and thus not within the statute's purview.  LGCY further says in the footnote:  "Because Sewell has already provided the Court with LGCY's briefing on these issues, LGCY incorporates by reference the arguments and authorities in its opposition to Sewell's motion for summary judgment in the Utah action.  (See Exhibit K to Sewell's Opp. At pp. 26—31.)"  LGCY does not address this point anywhere else in any of its filings with this court.

We conclude LGCY has forfeited any argument regarding Sewell's classification as a worker for failure to present it under a separate heading in the memorandum supporting its writ petition.  California Rules of Court, rule 8.485 provides that, with exceptions not applicable here, "rule 8.204 governs the form and content of documents in" writ proceedings.  Rule 8.204(a), governing the contents of briefs in civil appeals, requires that a brief "state each point under a separate heading or subheading summarizing the point[.]"  (Cal. Rules of Court, rule 8.204(a)(1)(B).)  Case law also counsels toward finding forfeiture in these circumstances.  (*Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 201 [argument not presented under a

21.

separate heading forfeited]; *Hall v. Department of Motor Vehicles* (2018) 26 Cal.App.5th 182, 193 [argument in footnote forfeited]; *Sabi v. Sterling* (2010) 183 Cal.App.4th 916, 947 ["Footnotes are not the appropriate vehicle for stating contentions on appeal."]; *Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1301, fn. 2 ["[I]t is not appropriate to incorporate by reference, into a brief, points and authorities contained in trial court papers, even if such papers are made a part of the appellate record"].) "These well settled rules of appellate practice are not mere technicalities. They ensure that opposing parties are fairly apprised of contentions so as to afford a full and fair opportunity to respond." (*Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 555.)

In light of this forfeiture finding, we will not address the superior court's implied finding that, for purposes of the demurrer, Sewell's complaint alleged sufficient facts to establish he was a LGCY employee and not an independent contractor.

### 2. *Oral modification of employment agreement*

The superior court concluded Sewell's promotion and resulting change in pay structure and job responsibilities, which occurred after January 1, 2017, constituted modifications to Sewell's employment agreement that would bring it within the purview of section 925. We find no error in this conclusion.

Sewell does not dispute that his employment agreement was never modified in writing. We also recognize the agreement contained a clause providing that no modification of the agreement would be binding "unless executed in writing by the party to be bound thereby." However, Civil Code section 1698, subdivision (b), provides that "[a] contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties." Sewell contends the oral modifications to his agreement were fully executed and thus valid modifications under Civil Code section 1698, subdivision (b). He in turn argues these modifications, occurring after January 1, 2017, bring him under section 925's protection. Assuming the allegations in

22.

Sewell's complaint are true, as we must on demurrer (*Sheehan v. San Francisco 49ers, Ltd.* (2009) 45 Cal.4th 992, 996), the alleged oral modifications to his position, job responsibilities, and pay structure were executed modifications that brought him under section 925.

We first observe Sewell's employment agreement set forth his position, job responsibilities, and compensation structure, and thus a change to any of these aspects would constitute a modification to the written agreement. A modification to compensation has already been held to be sufficient to bring an employment contract within the purview of section 925. (*Midwest Motor Supply, supra,* 56 Cal.App.5th at pp. 715—716.) *Midwest Motor Supply* involved a *written* modification to an employment contract, which is not the case here. But this is irrelevant because Sewell's complaint avers that his pay structure "changed" in "April or May 2017." We liberally construe this allegation to mean that his new pay structure was effectuated in April or May 2017, resulting in an "executed" (not merely executory) modification to the employment agreement (Civ. Code, § 1698, subd. (b)). (*Ferrick v. Santa Clara University* (2014) 231 Cal.App.4th 1337, 1341 [complaint's allegations construed liberally in favor of pleader on demurrer].) Put differently, we do not construe this allegation to mean that the parties agreed Sewell's pay structure would be changed but was never effectuated. Moreover, Sewell's and LGCY's complaints both allege Sewell was promoted from sales representative to regional sales manager, and Sewell's complaint further alleges his promotion to manager came with added job responsibilities.

We therefore conclude that, for purposes of the demurrer, the alleged oral modifications to Sewell's position, job responsibilities, and compensation structure, occurring after January 1, 2017, were sufficient to bring Sewell's employment agreement

under section 925.[6] That Sewell's employment agreement contains a provision that requires all modifications be in writing does not make Civil Code section 1698, subdivision (b), inapplicable. This is clear from comparing Civil Code section 1698, subdivision (b), to subdivision (c) and to the Law Revision Commission comments on Civil Code section 1698.

Civil Code section 1698, subdivision (c), reads in relevant part: "Unless the contract otherwise provides, a contract in writing may be modified by an oral agreement supported by new consideration." The Law Revision Commission comments on Civil Code section 1698 provide in part: "The introductory clause of subdivision (c) recognizes that the parties may prevent enforcement of *executory* oral modifications by providing in the written contract that it may only be modified in writing.… Such a provision would not apply to an oral modification valid under subdivision (b)." (Cal. Law Revision Com. com., 9 West's Ann. Civ. Code (2011 ed.) foll. § 1698, p. 458, italics added.) The Law Revision Commission comments thus clarify that where, as here, a written agreement prohibits oral modifications, an oral modification nevertheless is enforceable to the extent it has been executed by the parties.

## V. Full Faith and Credit doctrine

Our analysis does not end with our conclusion that section 925 provides an applicable exception to California's compulsory cross-complaint statute and therefore the trial court did not err in overruling the demurrer based on California law. This is because LGCY argues that, even if section 925 provides an exception to California's compulsory

---

[6] Counsel indicated at oral argument that even certain minor accommodations or a single, modest change to a term or circumstance of employment would necessarily constitute a contractual modification. We reject that overly broad conceptualization. However, we need not establish a lower limit of changes substantial enough to be considered a modification of an employment contract, because we are satisfied that the change in work duties, title and compensation described here, taken together, are sufficient.

cross-complaint statute, the Full Faith and Credit Clause of the United States Constitution nevertheless compelled the superior court to apply Utah's compulsory cross-complaint rule in determining whether Sewell could bring his claims in California.

Article IV, section 1, of the United States Constitution provides that "full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." (Unnecessary capitalization omitted.) This is supplemented by a provision in the Federal Judicial Code, which states: "Such Acts, records and judicial proceedings or copies thereof … shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." (28 U.S.C. § 1738.)

The United States Supreme Court has interpreted the Clause as requiring that an out-of-state *judgment* be given the same effect in the several states as it would be given in the adjudicating state. (*Mills v. Duryee* (1813) 11 U.S. 481, 485.) "A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land. For claim and issue preclusion (res judicata) purposes, in other words, the judgment of the rendering State gains nationwide force." (*Baker by Thomas v. General Motors Corp.* (1998) 522 U.S. 222, 233, fn. omitted.) The Court has also held that a statute is a "public act" within the Clause's meaning, and hence entitled to some measure of credit. (*Franchise Tax Bd. of California v. Hyatt* (2016) 578 U.S. 171, 176 (*Hyatt II*).)

However, different credit is owed to statutes versus judgments under full faith and credit precedent. In the United States Supreme Court's words:

> "As we have explained, '[o]ur precedent differentiates the credit owed to laws (legislative measures and common law) and to judgments.' *Baker* [*by Thomas*] *v. General Motors Corp.*, 522 U.S. 222, 232, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998). Whereas the full faith and credit command 'is exacting' with respect to '[a] final judgment ... rendered by a court with

adjudicatory authority over the subject matter and persons governed by the judgment,' *id.*, at 233, 118 S.Ct. 657, it is less demanding with respect to choice of laws. We have held that the Full Faith and Credit Clause does not compel ' "a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate." ' *Sun Oil Co. v. Wortman*, 486 U.S. 717, 722, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988) (quoting *Pacific Employers Ins. Co. v. Industrial Accident Comm'n*, 306 U.S. 493, 501, 59 S.Ct. 629, 83 L.Ed. 940 (1939))." (*Franchise Tax Bd. of California v. Hyatt* (2003) 538 U.S. 488, 494 (*Hyatt I*).)

The United States Supreme Court further instructs that the Clause " 'does not require a State to substitute for its own statute, applicable to persons and events within it, the statute of another State reflecting a conflicting and opposed policy.' " (*Hyatt II, supra,* 578 U.S. at p. 176; quoting *Carroll v. Lanza* (1955) 349 U.S. 408, 412.) However, a state may not enact a law that advances a " 'policy of hostility to the public Acts' " of a sister state. (*Hyatt II*, at p. 176.)

LGCY does not acknowledge this United States Supreme Court precedent holding that statutes are entitled to less credit than judgments. Instead, LGCY makes an argument that implies that Utah's compulsory cross-complaint rule is entitled to the same credit as a final judgment. Its argument also implies that the superior court was constitutionally compelled to apply the Utah statute even though no final judgment had yet been rendered in Utah. Framed differently, LGCY contends that, in situations where an action is pending in a state court, and a defendant files a related claim in a sister state's court that the first state's law considers to be a compulsory counterclaim, the Clause *compels* the second state's court to give credit to the first state's compulsory cross-complaint statute and deem the claim barred. LGCY cites just one case to support this proposition, but it is inapposite. There is no federal or California authority standing for the proposition that, in situations where an action is pending in one state and no final judgment has been entered, and a related action is filed in a sister state, full faith and

26.

credit principles compel the second state's court to give credit to the first state's compulsory cross-complaint statute.

The case LGCY relies on is *R.S. v. PacifiCare Life & Health Ins. Co.* (2011) 194 Cal.App.4th 192 (*PacifiCare*). It cites that case for the proposition that "[w]hen, as here, a California court is determining whether claims that could have been asserted in a prior related action are barred, the Full Faith and Credit Clause of the U.S. Constitution requires the California court to consider the compulsory cross-complaint rule of the foreign state." However, *PacifiCare*'s holding does not instruct that the superior court here was compelled under full faith and credit principles to apply Utah's Rule 13(a) to Sewell's claims.

In *PacifiCare*, multiple insurance companies together filed a lawsuit in Missouri state court seeking to rescind insurance policies for two insured individuals. (*PacifiCare, supra,* 194 Cal.App.4th at p. 196.) Five months later, the insureds filed in the Missouri action a cross-complaint for breach of contract based on the insurer's termination of benefits. (*Ibid.*) The insureds later dismissed without prejudice their breach of contract cross-complaint, and the next day filed in California state court a complaint against the insurers seeking damages for breach of contract and related claims. (*Ibid.*)

The insurers moved the California court to stay the California proceeding since the California complaint raised issues identical to those raised in the company's Missouri declaratory relief action. The insurers asked the California court to await the Missouri court's entry of judgment before proceeding with the California matter, and the California court agreed. (*PacifiCare, supra,* 194 Cal.App.4th at p. 196.) The Missouri court eventually entered judgment for the insureds and ordered the insurers to pay the insureds their full benefits under their policies, including benefits withheld in the past. (*Ibid.*)

The California court lifted its stay after the Missouri court entered its judgment, and the insurers thereafter demurred to the California complaint. (*PacifiCare, supra,*

27.

194 Cal.App.4th at p. 196.)  The demurrer argued that Missouri's compulsory cross-complaint rule, which insurers asserted California had to apply under full faith and credit principles, barred the insureds' lawsuit.  (*Ibid.*)  The insureds countered that Missouri's compulsory cross-complaint rule did not apply to their California claims, and thus their withdrawal of those claims from the Missouri action did not prohibit them from pursuing the claims in California.  (*Id.* at pp. 196—197.)

The trial court sustained the demurrer without leave to amend, recognizing that "constitutional mandates and California law directed the court to look to Missouri law to determine the consequences under Missouri's compulsory counterclaim rule of [the insureds] not pursuing their counterclaims in the Missouri proceeding."  (*PacifiCare, supra,* 194 Cal.App.4th at p. 197.)  The trial court concluded that, under Missouri's compulsory cross-complaint law, the Missouri judgment barred the insureds' California claims because those claims could have and should have been brought as counterclaims in Missouri.  (*Ibid.*)  The Court of Appeal affirmed, stating that "[t]he full faith and credit clause obligates California to enforce the Missouri judgment to the same effect as if [the insurers] sought the judgment's enforcement in Missouri."  (*Id.* at p. 201.)

LGCY contends *PacifiCare* could not be more apposite.  However, *PacifiCare*'s fundamentally different procedural posture renders it inapposite to this case.  *PacifiCare* involved the preclusive effect of a *judgment*, whereas this case presents the question of what preclusive effect a *statute* has before a final judgment is entered.  The similarity between *PacifiCare* and this case is that both present a question concerning the credit owed to a sister state's compulsory cross-complaint statute.  LGCY highlights this similarity but downplays the critical difference that in *PacifiCare* a final judgment had been obtained, which is not the case here.

The *PacifiCare* court's reasoning makes clear that the existence of a final judgment in the sister state (Missouri) controlled the analysis and disposition there.  Because there was a final judgment rendered in Missouri, the Clause required the

California court to determine what effect that judgment would have in Missouri and then apply that same effect in California. To determine the effect the judgment would have there, the Court of Appeal correctly observed it had to consider the effect of Missouri's compulsory cross-complaint statute. The Court of Appeal cited Missouri case law holding that Missouri's " 'compulsory counterclaim rule is simply the codification of the principles of *res judicata* and collateral estoppel. Claims and issues which would have been litigated in a prior adjudicated action are precluded in a later action between the same parties or those in privity with them.' " (*PacifiCare, supra,* 194 Cal.App.4th at p. 203, quoting *Beasley v. Mironuck* (Mo.Ct.App.1994) 877 S.W.2d 653, 656.) Since the effect of the Missouri judgment would be to bar the insureds' counterclaims in Missouri, the California Court of Appeal correctly concluded that full faith and credit principles required that the judgment be given that same effect in California.

In *PacifiCare,* Missouri's compulsory cross-complaint statute was relevant in determining what effect the Missouri judgment would have in Missouri. Thus, if it could be said that the *PacifiCare* court applied the Clause to Missouri's compulsory cross-complaint statute, it was for the purpose of determining what effect the judgment would have in Missouri. Critically important is that the *PacifiCare* court did not hold that the Clause applied to Missouri's compulsory cross-complaint statute untethered to the Missouri judgment. The *PacifiCare* case stands for the proposition that a court, when determining the preclusive effect of a sister state judgment, must consider the effect the sister state's compulsory cross-complaint statute may have on the judgment.

Therefore, the single case LGCY relies on to support its argument is inapposite. We have found no other authority standing for LGCY's proposition that, in these circumstances, the Clause *compels* a California court to give credit to a sister state's compulsory cross-complaint statute while the sister state case is still pending and hence a final judgment has not yet been entered. We therefore reject LGCY's contrary

29.

proposition.  LGCY has not presented a convincing argument as to how the Clause compelled the superior court to sustain its demurrer to the California action.

We recognize that denying this petition creates the possibility that the Utah and California actions will proceed concurrently, and that one action may lead to a judgment first and then be applied as res judicata in the other.  This " 'is a natural consequence of parallel proceedings in courts with concurrent jurisdiction[.]' " (*Advanced Bionics Corp. v. Medtronic, Inc.* (2002) 29 Cal.4th 697, 706.)  However, avoiding this undesirable possibility requires a public-policy exception to the Clause that the law does not recognize.

## DISPOSITION

The order to show cause is discharged and the petition for writ of mandate is denied.  Upon finality of this opinion, the stay of trial proceedings is vacated.  (*State Water Resources Control Bd. v. Superior Court* (2002) 97 Cal.App.4th 907, 919.)  Real party in interest is awarded his costs on appeal.


SNAUFFER, J.

WE CONCUR:


POOCHIGIAN, ACTING P. J.


DETJEN, J.

30.